## Walden v. Wheeler.

(Decided March 28, 1913.)

### Appeal from Whitley Circuit Court.

Damages—Death of Oxen From Eating Mill Feed Containing Glass—When Dealer Selling Feed Not Liable.—A dealer who sells mill feed to a customer in the original packages, without any representation as to its quality, is not liable to a customer for the loss of his oxen to which the mill feed was fed, they having died by reason of ground glass contained in the mill feed.

R. S. ROSE, R. L. POPE for appellant.

TYE & SILER for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Affirming.

M. A. Wheeler was running a country store, and also a saw mill. Mary Bell Walden was hauling logs to the saw mill with her ox team for him and was getting out of the store mill feed for her cattle. One evening her son came by the store, and got five bags of mill feed, reaching home after dark with it. They opened one of the bags and fed the cattle that night out of it. The next morning the cattle were sick; the result was one of them died and the others were more or less injured. On cutting open the one that died, glass was found in its stomach which had caused its death. Upon examination of the mill feed it was found that there was the same glass in three bags of the mill feed, the other two bags being all right. Wheeler had bought the mill feed from the Jellico

Grocery Company, a wholesale dealer, and it had bought it from the manufacturer in Louisville, the Louisville Cereal Mill Company. Wheeler received the mill feed in 100 pound sacks, securely tied or sewed with metal tags upon them, and he delivered the sacks to Mrs. Walden's son as he received them, without opening them or inspecting the contents. He used the same feed for his own cattle, and she had gotten it from him often before, but there had never been any trouble up to that time. She brought this suit against him to recover damages alleging that he sold her five sacks of mill feed to be fed to her cattle; that at the time she purchased it he knew it was bought for that purpose; that the mill feed contained large quanties of ground glass; that she had no opportunity to inspect the mill feed, and that the glass was so mixed with it when the defendant sold it to her, that its presence could not be reasonably discovered and that it would kill whatever live stock it was fed to; that she believed and relied on the fact that he would sell her such feed only as was fit and wholesome for her stock, and that she had been damaged in the sum of $205. No express warranty was pleaded. The petition is framed entirely on the ground that the defendant sold an impure mill feed, knowing the purpose for which it was to be used, and that the mill feed in consequence of the glass in it, was unfit for the purpose for which it was sold. An answer was filed by the defendant in which he traversed the allegations of the petition. The case came on for trial before a jury; the court instructed the jury in substance that if the defendant failed to exercise ordinary care to furnish the plaintiff such mill feed as was suited to feed cattle, they should find for her, otherwise they should find for the defendant. The jury found for the defendant, and the plaintiff's petition having been dismissed, she appeals.

Under the evidence the instruction of the court was equivalent to a peremptory instruction to the jury to find for the defendant; for there was no evidence of negligence on his part. He had bought the mill feed from a regular dealer, and sold it in the original packages just as he received it, as the purchaser knew, without making any representation about it, the fact being that both of them had used the same feed before, and one knew as much about it as the other. It is insisted that the court misinstructed the jury, and that under the evidence the

court should have told the jury that the defendant, in selling the mill feed to be fed to cattle, impliedly warranted it to be fit for the purpose, for which it was sold. This is practically the only question raised on the appeal. The precise question is new in this State, and we have found the authorities on the subject unusually conflicting.

In Blackstone's Commentaries it is said that in contracts for provisions it is always implied that they are wholesome, and that if they be not, an action for deceit lies against the vendor. (3 Blackstone 166.) In Chitty on Contracts, it is said that in contracts for the sale of provisions by dealers and common traders in provisions, there is an implied warranty that they are wholesome. (Chitty on Contracts, 419.) Similar statements are made in other text books, but in Benjamin on Sales it is pointed out that the cases turned on the *scienter* of the seller or on the peculiar duty of vinters, brewers, butchers and cooks under an English statute passed in the reign of Henry III. (See 2 Benjamin on Sales sec. 1006-1007.) There is a later English statute passed in the reign of Queen Victoria, but that is not applicable here, and we have no statute on the subject. It would seem that in some of the American cases there was a misconception of Blackstone's meaning, as he says an action for deceit will lie; and in an action for deceit the gist of the action is the *scienter*. In other words, it would seem that the court in these cases overlooked the fact that the English statute applied only to certain classes of persons who furnished meat and drink to persons. But in some of the cases, the rule is broadly maintained on the ground of public policy; but it is held that it does not apply to water (See Mechem on Sales, Secs. 1356-1359), and some of the cases have limited it to food intended for human use. (See note to McQuaid v. Ross, 22 L. R. A., 195, Farrell v. Manhattan Market Co., 15 L. R. A., N. S., 884, and note, Gold Ridge Mining Co. v. Tallmadge, 102, Am. St. Rep., 602 and note, page 623.)

In Jones v. Murray, 3 T. B. Mon., 83, the action was brought by one dealer against another dealer, and the court held that it could not be maintained in the absence of an express warranty or deceit. In Coyle, &c. v. Baum, 3 Okla., 695, the plaintiff bought oats from a dealer who handled both oats and castor beans. By his negligence, the oats and the castor beans had become mixed, and as

a result the plaintiff's horses were killed. The defendant was held liable. But the jury in that case found as a fact that the defendant was negligent. In Houk v. Berg, 105 S. W. 1176, the plaintiff bought bran to feed to his horses, which was poisonous, and the horses died. The dealer was held liable by the circuit court, and was given judgment over against the manufacturer. On appeal the judgment was affirmed by the court of Civil Appeals of Texas. On the other hand in Julian v. Laubenberger, 38 N. Y. Sup., 1052, it was held that a dealer who sells to a customer, food in a sealed can does not impliedly warrant that it is wholesome. In that case the New York supreme court said:

"The law cannot be so unreasonable as to inject into a contract what neither party had, or could have had, in mind at the time the contract was made. Now, as has been stated above, the reason for the rule entirely ceases in a case like the one under consideration. In the progress of affairs, the manner of preparing and selling food has come to that condition that everybody purchasing ought to be presumed to know that the retail merchant, who sells to the consumer food sealed in cans, and with which he has no connection other than as conduit between packer and the consumer, has no superior means of knowing the contents of the can than the purchaser has, and in that event, if the purchaser desires to protect himself, he may ask for an investigation at the time of purchasing, or he may get an express warranty as to the quality of the goods, and if he fails to do this, the maxim of *caveat emptor* must apply. If, knowing this, he purchases canned goods, opens them, and uses them without inspection, and without special means of knowing whether the contents are wholesome or not, he is not protected by an implied warranty on the part of the vendor."

It seems to us that this is a sound rule and that where a dealer sells to his customer an article in the original package in which it is put up by the manufacturer, and the customer knows as much about the article as the dealer, and buys it without any representation from the dealer or reliance upon his judgment, knowing that there has been no inspection of it by the dealer, there is no implied warranty, although the dealer knows that the customer buys it to feed his cattle. There are not a few cases holding that where the customer buys an article in reliance upon the judgment of the dealer, and the

dealer knows this, there is an implied warranty, if the selection of the food is left to him. (See cases above cited.) But there seems to be no good reason why this rule should be applied to sales of mill feed in the original package where the dealer does not make the selection, and the purchaser does not rely upon his judgment.

In Randall v. Newson, 2 Q. B. D., 102, it was pointed out that speaking accurately, the question is not a matter of implied warranty, but of implied condition in the sale of articles intended for food. This distinction was recognized in Murchie v. Cornell, 31 Am. St. Rep. 526, Leavitt v. Fiberloid Co., 15 L. R. A., N. S., 855. In other words, if an article is sold for food, and is unfit for food, the condition is broken, and the contract fails. We are unwilling to go beyond this in the case before us. The question of the liability of the manufacturer is not presented; but the defendant having acted in good faith, and being guilty of no negligence, we see no reason for holding him liable for the loss of the cattle. (See Peaslee-Gaulbert Co. v. McMath's Admr., 148 Ky., 265.)

Judgment affirmed.