91 So.2d 483

**BAYLISS MACHINE & WELDING
COMPANY et al.**

v.

**HUNTSVILLE ICE & COAL COMPANY.**

8 Div. 775.

Supreme Court of Alabama.

Jan. 12, 1956.

Rehearing Granted Dec. 21, 1956.

Watts & Salmon, Huntsville, for appellee.

Smyer, Smyer, White & Reid and Geo. Peach Taylor, Birmingham, for appellants.

MAYFIELD, Justice.

This is an appeal from a judgment in favor of the plaintiff-appellee rendered by the Circuit Court of Madison County.

The cause was tried without a jury. The plaintiff's claim for damages arose out of an alleged fraudulent misrepresentation made by appellants' agent in connection with the sale of a refrigeration unit by the defendants-appellants to the plaintiff-appellee. The appellee was engaged in the business of manufacturing and selling ice in the city of Huntsville, Alabama. Appellants are engaged in the business of selling refrigeration equipment. In April 1951, the appellee-plaintiff purchased an additional ice house in Huntsville, Alabama, known to this Court as the Mason-Brown Plant. Shortly after the appellee purchased the Mason-Brown Plant, they stopped the manufacture of ice at this plant and began using it as a storage outlet for ice manufactured at its main plant, which was some eight blocks distant. Ice was shipped from the appellee's main plant to the Brown-Mason Plant, where it was stored, cut into desired sizes and sold through coin operated vending machines.

The appellee decided that the refrigeration equipment at the Brown-Mason Plant could not be operated economically under its new system. Mr. James F. Watts, the Manager of the Huntsville Ice and Coal Company, discussed the matter with Mr. A. F. Feaster, the Manager of the refrigeration department of the Bayliss Machine and Welding Company. Mr. Watts told Mr. Feaster that he needed a new refrigeration unit and whatever else was necessary to maintain a constant temperature in the ice storage room. Mr. Feaster was a graduate engineer with thirty years' experience in refrigeration. In their respective capacities for their employees, Mr. Watts and Mr. Feaster had had numerous dealings with each other over a period of the last four years.

Thereafter, Mr. Feaster examined the ice storage room, took measurements of all surfaces, examined the insulation on the walls, and noted that the floor was made of wide boards and that the ceiling was of tongue and groove. However, he made no further examination of the floors and ceiling with respect to insulation.

Following their discussion, Mr. Watts received the following letter from Mr. Feaster, dated 5 July 1951:

"Dear Mr. Watts:

"We take pleasure in quoting on the following freon equipment for refrigerating the ice storage room at the Mason-Brown Plant, this room is 16′ 7″ wide by 30′ long by 7′ 10″ high. It will require 15900 BTU per hour based on 18 hours per day operation when the outside temperature is 100° F. and the storage room temperature is 28° F.

"1 F–300FS Frick low pressure Freon–12 unit complete including a two cylinder, 2½″ bore by 3″ stroke F–12 compressor v-belt driven by a 3 phase, 60 cycle, 220 volt, 3 H.P., motor with magnetic starter, air cooled condenser, receiver, automatic low pressure control, all mounted on a cast iron base, capacity when operating at 615 R.P.M. with 10° F. suction and 100° F. air 17000 BTU per hour.

"1 LT Larkin low temperature Frost-O-Trol, automatic hot gas defroster and hot gas solenoid valve capacity 16000 BTU per hour with 16° F.T.D. Model No. LT 388.

"1 heat exchanger
"1 dryer ⅜" connection refillable type
"1 ⅜" solenoid valve strainer 110 volts
"1 ⅜" thermal valve
"1 thermostat
"1 ⅜" two way valve
"20' ⅜" copper tubing
"20' 1⅛" copper tubing
"2 ⅜" adapters and coupling
"2 1⅛" adapters and coupling
"4 ⅜" elbows sweat
"4 1⅛" elbows sweat
"3 ⅜" couplings
"3 1⅛" couplings
"Freight
"15 lbs Freon–12
"1 check valve for discharge line.

"Price of above equipment $932.00 f. o. b. Huntsville, Alabama.

"Thanking you for the opportunity of quoting on this equipment and hoping to be favored with your order, we are,

> "Yours very truly,
> "Bayliss Machine & Welding Company
> "/s/ A. T. Feaster
> "Manager
> "Refrigeration Department"

The appellee purchased the equipment recommended by Mr. Feaster in his letter and installed the same in late October 1951. This equipment worked properly during the winter months and maintained the desired twenty-eight degree temperature.

On 5 May 1952 when the outside temperature had risen to eighty-five degrees or higher, Mr. Watts noticed that the ice in the storage room was melting. Mr. Watts then checked the floor in the storage room and found that it was not insulated and ordered and installed cork insulation. No appreciable improvement resulted.

On 5 June 1952, defendants-appellants were notified of the plaintiff-appellee's inability to maintain a sub-freezing temperature in its storage room. Mr. Feaster investigated and suggested that additional insulation be installed on the walls and ceilings. This the appellee did. Mr. Feaster and other employees of the Bayliss Company made various adjustments in the refrigeration equipment. Still no appreciable improvement resulted and the ice in the storage room continued to melt. It then became apparent that the refrigeration equipment lacked the necessary capacity to keep the storage room at the desired temperature. After defendants-appellants were given the opportunity to supply an auxiliary refrigeration unit at its expense, the appellee purchased and installed such a unit from another source. After this auxiliary unit was installed, the ice company was able to maintain the desired temperature in the ice storage room.

Appellee's complaint was in three counts. The misrepresentation charged in each count was based on the letter from Mr. Feaster to Mr. Watts on 5 July 1951. Count 1 alleges that the misrepresentations were wilfully made; count 2 alleges that the misrepresentations were recklessly made without knowledge of their falsity; and count 3 that the misrepresentations were made innocently and by mistake. Judgment was for the appellee ice company in the amount of $2,214.33. It is obvious that this amount included damages for the expense involved in the purchase and installation of the auxiliary refrigeration unit, insulation and service charges, loss of ice, and interest on these items from the date of the filing of the complaint.

■ Appellants' first contention is that the verdict was contrary to the weight of the evidence. It is alleged that the evidence fails to show any misrepresentation, in that appellants' representation was that this specific refrigeration unit would produce 14,900 BTU per hour, and that there is no evidence that this unit did not produce 15,900 BTU per hour, as represented. It is

further contended that the evidence shows that the manager of the appellee company requested a refrigeration unit for an "ice storage room" and that this term has a well defined meaning in the trade denoting certain minimum cork insulation. Further, that the evidence was insufficient to show that the unit in question would not adequately refrigerate an "ice storage room" of the same dimensions as appellee's storage room.

It is our opinion that appellants' conclusions are not supported by the evidence. It is clear to us that the appellee called appellants' refrigeration expert and made known to him its desire to purchase a refrigeration unit which would cool this particular room to a temperature of twenty-eight degrees when the outside temperature was one hundred degrees Fahrenheit. Appellants' refrigeration expert examined this particular room, and it is clear that the representation that he made to the appellee was that the specific unit described in his letter would serve the needs of appellants with reference to this particular storage room. The evidence is clear that appellants relied on the representations made by the appellee's refrigeration expert and purchased the specific unit from appellants in reliance on these representations. It is undisputed that the unit specified in the letter failed to cool this storage room in the manner represented.

■ Appellants concede that under the law of this State in order to prove an action of fraud, it is not necessary that the misrepresentations relied upon should have been wilfully made to deceive or even recklessly made. Code of Alabama 1940, Title 7, § 108; Rudman v. Hooks, 252 Ala. 280, 40 So.2d 866; Standard Oil Co. v. Myers, 232 Ala. 662, 169 So. 312; Cartwright v. Braly, 218 Ala. 49, 117 So. 477. Therefore, we conclude that the trial Court's finding is not contrary to the weight of the evidence.

■ Appellants also contend that the damages adjudged by the trial Court were excessive. Appellants correctly stated the general rule that in fraud cases the measure of damages is the difference between the value of the article purchased and its value as represented. Phillips v. Malone, 223 Ala. 381, 136 So. 793; Preston Motors Corporation v. Wood, 208 Ala. 172, 94 So. 70. This rule does not, however, preclude recovery of the damages claimed in this case. One injured by a fraudulent misrepresentation is entitled to recovery of all the damages within the contemplation of the parties which were the natural and proximate consequences of the fraudulent misrepresentation. Fidelity & Casualty Co. of New York v. J. D. Pittman Tractor Co., 244 Ala. 354, 13 So.2d 669; Caffey v. Alabama Machinery & Supply Co., 19 Ala.App. 189, 96 So. 454, certiorari denied Ex parte Alabama Machinery & Supply Co., 209 Ala. 466, 96 So. 459. The rule is expressed in 37 C.J.S., Fraud, § 143 b(8)(e), p. 488, as follows:

"Where property is sold for a particular purpose and the seller misrepresents its fitness for such purpose, he is liable for all damages proximately caused by its unfitness for the purpose for which it is purchased, * * *."

The damages suffered by appellee in attempting to minimize his losses comes within the stated rule. The undisputed testimony establishes that the amounts expended by the appellee for service charges, insulating materials, and an auxiliary refrigeration unit were reasonable. It appears that as to these items, the damages adjudged were proper and not excessive.

■ The judgment also included $670.60 as damages for loss of ice. It is this item of compensation with which we must presently be concerned. That substantial quantities of ice in appellee's storage room did melt because of inadequate refrigeration appears without dispute. It also appears that appellee replaced the melted ice with other ice manufactured by it. Because of such replacement of the melted ice, no

sales were lost. In determining the amount of appellee's loss from melted ice, evidence was introduced and the Court below based its computation on a premium retail price at which the melted ice would have been sold if it had been sold through appellee's vending machines. Under the authorities, this does not seem to be the proper measure of damages. The true measure of damages in such a case is the replacement cost of the ice which was destroyed, together with expenses incident to such replacement. Sutherland on Damages, 4th Edition, Vol. IV, Section 1098, page 4178; Needham Piano & Organ Co. v. Hollingsworth, 91 Tex. 49, 40 S.W. 787; International Harvester Co. of America v. Chicago, M. & St. P. R. Co., 186 Iowa 86, 172 N.W. 471; Wehle v. Haviland, 69 N.Y. 448.

But from the state of the record, no proper objection was made by the defendants to the introduction of the evidence of loss of profits and parties may try their cases on immaterial evidence if they desire and cannot take advantage of the introduction of such evidence after it goes in without proper objection or protest. Birmingham Railway, Light & Power Co. v. Girod, 164 Ala. 10, 51 So. 242.

The evidence thus having gone in without proper objection, the Court was privileged to consider it as legal evidence. Moon's Adm'r v. Crowder, 72 Ala. 79; Somerall v. Citizens' Bank, 208 Ala. 501, 94 So. 476. And such evidence was entitled to as much weight as if it had been proper. Birmingham Railway & Electric Co. v. Wildman, 119 Ala. 547, 24 So. 548.

The defendants did interpose objection to the evidence on the ground that it was a conclusion and not properly predicated on sufficient facts, but at no time raised the proper objection that the evidence was not the proper measure of damages in the case. Being so, the Court will not be put in error for its admission and consideration. For analogy see Hamilton v. Browning, 257 Ala. 72(11), 57 So.2d 530.

We have concluded that no reversible error is presented on this appeal. It follows that the judgment of the Circuit Court is due to be, and is hereby affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and GOODWYN, JJ., concur.

On Rehearing.

PER CURIAM.

We now think the court fell into error in the above opinion in holding that although the trial court misapplied the law to the facts found, the error is not of a sort which requires a reversal of the judgment because the objection to the evidence was not sufficient to raise the question of law involved.

The controversy was as to the proper measure of damages in a suit for deceit in the sale of a cooling machine or refrigeration unit sold by appellants to appellee. The unit was found not to be of sufficient capacity to keep ice from melting in a storage room where appellee kept ice to supply its vending machines in various locations. As soon as this was discovered, appellants (defendants) were notified and they collaborated with appellee in insulating the room and adding additional equipment which served the purpose for which the first machine was purchased. Before the correction was accomplished appellee sustained a loss in the melting of ice in the storage room. The finding of facts and conclusion of the trial judge are best stated in his own language, as follows:

"In calculating its ice losses the plaintiff took the reported sales from its vending machine during the period from July 7, 1951, to July 14, 1951, and ascertained the number of sales from each machine by dividing the total sales of each machine by the base price of (at) that vending machine. By multiplying (the amount of the receipts from ?) the sales by the number of pounds of ice supposed to be dispensed by the machine on each side, the total number of pounds of ice which

should have been dispensed by the machine during that period was ascertained. By dividing the total receipts for the period by the number of tons of ice represented by the sales, the plaintiff claims that the average price per ton received for ice through the vending machine was $19.73. However, it is clear that the plaintiff was in error as to the number of sales of 50-pound blocks of ice and also as to the number of pounds from the total sales. Instead of there being 444 sales for a total of 22,200 pounds, there would be 738 sales for a total of 36,900 pounds of ice. With this correction in the figures, the average price per ton received for ice would be $14.95 instead of $19.73; and when the price received for all ice delivered to the Mason Brown plant during the period of the claimed losses ($2911.00) is divided by the total number of tons of ice delivered to the plant during that period (239½), we find the average price received per ton for ice sold at the Mason Brown plant would be $12.15. The difference in the total price received per ton and the price which each ton should have brought would be $2.80 instead of $7.58. In ascertaining the total loss from melted ice we then find the loss would be $670.60, and not $1815.41."

This application for rehearing is directed solely to the item of $670.60 and the interest on it. Therefore, we shall only consider that. It is lost profit specially claimed in the complaint, as it must be. Swedenburg v. Copeland, 263 Ala. 241, 82 So.2d 227; Lambert v. Jefferson, 251 Ala. 5, 36 So.2d 594; Cortner v. Anderson, Clayton & Co., 225 Ala. 575, 144 So. 443.

The evidence is that appellee lost no sales on account of the loss of that ice. Every demand for the purchase of the ice was met so that no profit was lost on a resale.

The former opinion expresses the view that the loss to plaintiff represented by the

melted ice is that amount which would purchase ice of equal value in the market, or the replacement cost of it. We think that conclusion is well supported by the authorities cited, and it is not questioned on this rehearing. See McFadden v. Henderson, 128 Ala. 221, 29 So. 640.

Appellants should not be penalized for the failure to make proper objection to evidence which tends to show damage beyond that which the law allows. While we are inclined to the view that the objection was based on a ground which raises the question, appellants' right to have it excluded from allowance is not dependent upon their proper objection to the evidence. The legal question involved may be raised either by a motion to strike the claim from the complaint, objection to the evidence or written request for instruction to the jury. Mixon v. Trawick, 264 Ala. 82, 84 So.2d 760(6); Treadwell v. Tillis, 108 Ala. 262, 19 So. 886.

If on a trial by jury defendants were entitled to have the item excluded by a requested charge given to the jury, the court trying without a jury should not include it. The assignment of error in that respect is of the judgment overruling the motion for a new trial. That ground was specified in the motion, and therefore the question is duly presented here. Cobb v. Malone, 92 Ala. 630, 9 So. 738; Sections 764, 765, Title 7, as amended, pocket part Code.

Therefore, it is apparent that the judgment of the court was in error in respect to the item which we have discussed, but there is no evidence upon which to base a finding of the replacement value of the melted ice. The record is in such condition that this Court should not render a final judgment. Sections 260, 810, Title 7, Code.

The application for rehearing should be granted: the judgment of affirmance set aside, and one here entered reversing the judgment and remanding the cause.

The foregoing opinion on rehearing was prepared by FOSTER, Supernumerary Justice of this Court, while serving on it at the request of the Chief Justice under authority of Title 13, section 32, Code, and was adopted by the Court as its opinion.

Application for rehearing granted: judgment of affirmance set aside, and one here entered reversing the judgment and remanding the cause.

LIVINGSTON, C. J., and SIMPSON, GOODWYN and SPANN, JJ., concur.