105 So.2d 825

Murphy BRADFORD

v.

MOORE BROTHERS FEED AND GROCERY.

6 Div. 229.

Supreme Court of Alabama.

Oct. 9, 1958.

218

Lipscomb, Brobston, Jones & Brobston, Bessemer, for appellant.

Lipscomb & Lipscomb and L. H. Etheridge, Bessemer, for appellee.

SIMPSON, Justice.

The plaintiff has appealed from a judgment on a jury's directed verdict for the defendant in a suit for damages for breach of warranty in the sale of livestock feed. The complaint was in two counts, but the defendant's demurrer to Count Two was sustained, and Count One went to the jury.

Count One is as follows:

"The plaintiff claims of the defendants the sum of Thirty Five Hundred Dollars ($3500.00) damages, for a breach of warranty in the sale of livestock feed known as 'Snapped Ear Corn' by defendants to the plaintiff on the 7th day of January, 1955; which the defendants warranted to be good, healthy and wholesome livestock feed, proper and fit for immediate consumption by the plaintiff's cattle as a livestock feed, when in fact said livestock feed was heavily infested with Blue and Gray Mould."

At the conclusion of the plaintiff's evidence the defendant rested and requested the affirmative charge which was given by the trial court; hence this appeal.

Appellees, retailers in commercial feed and related items, contend that the evidence showed no express warranty (which is correct) and that it showed that the feed was sold in the original unopened sacks, packed by the manufacturer, and that under the general rule, where a retailer sells a product in the original sack or container packed by the manufacturer, there is no implied warranty and that the appellant could not rest a claim on such a breach, citing Kirkland v. Great Atlantic & Pacific Tea Co., 233 Ala. 404, 171 So. 735, and Dothan Chero-Cola Bottling Co. v. Weeks, 16 Ala.App. 639, 80 So. 734.

It is true that the two cases cited are authority for the proposition that the retailer who purchases in large quantities for resale is not liable to the consumer of articles of food for human consumption, if he purchases of a reputable manufacturer or dealer, and the goods so purchased and supplied by him are such as are without imperfections that may be discovered by the exercise of the reasonable care of a person

skilled and experienced in dealing in and supplying goods to the general public. Cf. Lollar v. Jones, 229 Ala. 329, 157 So. 209. We may note here that both cases make the rule expressly applicable only to cases involving food intended for human consumption. But we may assume for the purposes of this case, without deciding, that the principle is equally effective with regard to feed sold for the subsistence of livestock and other domestic animals. It would seem that this should be so *a fortiori*. At least it has been so applied in other jurisdictions. A. H. Andrews & Son v. Harper, 137 Wash. 353, 242 P. 27; Walden v. Wheeler, 153 Ky. 181, 154 S.W. 1088, 44 L.R.A.,N.S., 597; 1 Williston on Sales (Revised Edition, 1948), § 242, p. 636; 22 Am.Jur. 904; 77 C.J.S. Sales § 331, p. 1217; and cf. McMurray v. Vaughn's Seed Store, 117 Ohio St. 236, 157 N.E. 567 (cattle manure fertilizer).

It may be added that the general rule stated has neither been overruled nor modified in this state, although the trend is to a more liberal rule in other jurisdictions placing an implied warranty upon the retail sale of packaged items as well as those not packaged. The trend has apparently received especial impetus since the almost universal adoption of the Uniform Sales Acts. See the notes at 90 A.L.R. 1269 and 142 A.L.R. 1434. The adoption of the Uniform Sales Act in Alabama (Code 1940, Title 57, §§ 1–76) has worked no change of the general rule. The reaffirmation of the rule in the Kirkland case, supra, occurred in 1936, several years subsequent to the passage of the Act in this state, and the court in that case expressed their cognizance of the Act but dealt with the case without reference thereto. This position is consistent with the view stated by this Court and generally recognized most everywhere that § 21 of the Uniform Sales Act is only declarative of the common law. McCarley v. Wood Drugs, Inc., 228 Ala. 226, 153 So. 446; 77 C.J.S. Sales § 329, p. 1186.

The general rule to which recognition is given above, would require an affirmance were it not for the facts present here which we feel should be treated as within an exception to the rule. Here the retailer handled, stored, or treated the goods in a manner which would tend to alter the original condition of the goods as they were produced by the manufacturer and the clear inference arises that the retailer had actual or constructive notice of the defective status of the goods. The Kirkland case, supra [233 Ala. 404, 171 So. 736], recognized such a status to be an exception to the general rule where it was observed:

> "The complaint does not charge that defendant manufactured or sacked this flour; nor that the poison found its way into the flour while in defendant's possession; nor that anything on the sack, nor the source from which it came, gave notice to the retailer, or put him on inquiry touching its fitness for human consumption. For aught appearing, this was an ordinary sack of flour, put up by reliable millers, to be sold by the retailer intact, for the convenience of both merchant and customer."

And again:

> "In the absence of some averment disclosing that the poison found its way into the sack of flour here involved while *under the control of the retailer,* or some fact *charging him with lack of care* in selecting and selling that particular flour, the complaint was subject to demurrer." (Emphasis supplied.)

■ Although, generally, there is no implied warranty of a retailer on the sale of packaged food in the due, orderly course of business in Alabama, it would defeat the purposes of the doctrine of implied warranties and § 21 of the Uniform Sales Act to deny a purchaser the right to rely on an implied warranty in the sale of an item where the retailer does in fact have a superior knowledge of the goods sold, or better opportunity for inspection, which might impute to him notice, either actual or constructive, of some defective character of the goods pertaining to its mer-

chantability or fitness for a particular purpose. Cf. Lukens v. Freiund, 27 Kan. 664, 41 Am.Rep. 429.

On the trial of this cause the appellant produced testimony tending to show that the appellees, a partnership dealing in gas, feeds, and other farm supplies, had stored the livestock feed in question in an old rotten storeroom, wherein the floor was broken up and had holes in it and the tin roof had nail holes and cracks in it. The sides and top were constructed mostly of tin, with the exception of the wood framework, but the holes in the roof, which were several in number, were about the size of a pencil. The pitch of the roof was 60 degrees on one side and 10 degrees on the other. The sacks of feed were stacked upon the floor over near two windows, half of which were open to the weather. The appellant also testified that the feed, after coming into his possession, had not become wet either during the loading of the sacks onto the truck for delivery or afterwards. He described in some detail the good condition of the barn and crib in which the feed was stored after the sale. An expert gave testimony as to the nature of the mold infestation found in the feed sold and as to its probability as the cause of the injury to the appellant's cattle. He testified that moisture and heat will cause the mold or spore known as "Blue and Gray Mould" to multiply more quickly. This evidence was sufficient to present to the jury the question whether appellant had brought the case within the exception mentioned above. As sustentive see Kroger Grocery & Baking Co. v. Woods, 205 Ark. 131, 167 S.W.2d 869, tried on negligence, but where the facts are very similar to those of the present case.

■ In order to complete a showing of a prima facie case, the appellant had the burden of proving all other facts necessary to make out a case of express or implied warranty. Rinaldi v. Mohican Co., 225 N.Y. 70, 73, 121 N.E. 471, 472. Count One was in the Code form.—Code 1940,

Tit. 7, § 223, subd. 24, p. 203. Under that count either an express or implied warranty could have been proved. Van Antwerp-Aldridge Drug Co. v. Schwarz, 263 Ala. 207, 82 So.2d 209. That the count alleges that the defendants warranted the feed sold was "good, healthy and wholesome livestock feed, proper and fit for immediate consumption by the plaintiff's cattle as a livestock feed" does not exclude a claim for breach of an implied warranty. Those terms are equally descriptive of the content and scope of an implied warranty as to the fitness of livestock feed for the purpose intended. "Good, healthy and wholesome" are interchangeable words commonly used with reference to such products, and they generally mean "sound". 18A Words and Phrases, Good, 7; 45 Words and Phrases, Pocket Part, Wholesome.

They do not represent an affirmation of quality expressly. Since there was no evidence of an express warranty, it was necessary to show a warranty implied. To do this the appellant was required to bring himself within one of the exceptions defined in § 21 of the Uniform Sales Act, Code 1940, Tit. 57, since there is no implied warranty save as defined in these exceptions. Gilbert v. Louis Pizitz Dry Goods Co., 237 Ala. 249, 186 So. 179; Kirkland v. Great Atlantic & Pacific Tea Co., supra. The clause of that section which we regard as applicable under the facts of the case at bar is (1), which provides: "Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose." Two requisites thus appear: one, the buyer must have made known to the defendants the purpose for which the goods were required; two, the buyer must have relied on the skill of the seller. Blanchard v. Kronick, 269 Mass. 464, 169 N.E. 438.

■ The evidence showed that the appellant went to the Moore Brothers Store on about the 1st of January, 1955, and talked to one of the defendants about purchasing some cow feed. Appellant asked whether they had "the crushed corn". They did and he bought two tons of it along with half a ton of cottonseed meal and one ton of oat straw. Appellant testified that he said, "I told them cow feed". Appellant further testified that crushed corn, or snapped ear corn, is in common use for cow feed. A particular purpose may appear from the description of the article. Moreover, knowledge of the buyer's particular purpose may be shown from the sale alone, and the warranty may be reasonably construed in the light of common knowledge in reference to the nature of the article sold. Libke v. Craig, 35 Wash.2d 870, 216 P.2d 189.

■■ There was also enough evidence from which the jury could infer that appellant relied upon the good judgment of Moore Brothers in selecting livestock feed suitable for the purpose of feeding the appellant's cows. From the evidence the jury could also infer that the sickness occurring to the appellant's cows was proximately caused by the mold infestation found in the feed bought from the defendant. The evidence adequately narrowed the cause of the sickness to the mold discovered in the feed purchased from the defendants. No absolutely positive causal connection is required. In the very nature of things no direct proof of the cause of the trouble can be given. Direct proof is not necessary and circumstantial evidence may be resorted to. The requirements of the law are satisfied if the existence of this fact is made the more probable hypothesis, when considered with reference to the possibility of other hypotheses. The jury here could have been justified in concluding that the mold in the livestock feed was the cause of plaintiff's losses. Where fair-minded men may honestly differ as to the conclusion to be reached from the evidence, controverted or uncontroverted, the case must be submitted to the jury. Patton v. Ballam, 115 Vt. 308, 58 A.2d 817; Yormack v. Farmers' Cooperative Ass'n of New Jersey, 11 N.J. Super. 416, 78 A.2d 421. See also Burns v. Ralston Purina Co., 210 Ga. 82, 77 S.E. 2d 739.

■ In reviewing the ruling of the trial court in giving the affirmative charge for the defendant, we have viewed the tendencies of the entire evidence most favorable to the plaintiff, regardless of any view we may have had as to the weight of the evidence, and have followed such reasonable inferences as the jury was free to draw, not inferences which we may think the more probable. Wilson & Co., Inc. v. Clark, 259 Ala. 619, 67 So.2d 898; Mazer v. Brown, 259 Ala. 449, 66 So.2d 561; McClinton v. McClinton, 258 Ala. 542, 63 So. 2d 594.

■ Appellant offered some evidence to show the amount spent for the molded livestock feed, and this could be taken as some data for the estimation of damages, but, even assuming that no evidence had been presented for the purpose of figuring damages, appellant still would have been entitled to recover nominal damages for a breach of warranty proved. The evidence tended to support the plaintiff's claim and was sufficient to inform the jury as to the amount of recoverable damages. Therefore, the affirmative charge was improperly given for the defendants. Alabama Broom & Mattress Co. v. Nashville Broom & Supply Co., 208 Ala. 222, 94 So. 83.

Error in giving for the defendant the affirmative charge as to Count One, therefore, requires a reversal of the judgment.

■ We feel that it is apt to speak about a few other matters raised by the appellant, as a new trial may be had. The general rule of damages for a breach of warranty is that the plaintiff is allowed to recover the difference between the actual value of the chattel and what it would have been worth if as warranted. Willingham v. Wesley Hardware Co., 227 Ala.

280, 149 So. 703; Sudduth v. Holloway, 212 Ala. 24, 101 So. 733; Attalla Oil & Fertilizer Co. v. Goddard, 207 Ala. 287, 92 So. 794; Alabama Broom & Mattress Co. v. Nashville Broom & Supply Co., supra; Vann v. McCord, 22 Ala.App. 241, 114 So. 418.

 The measure of damages in a case such as this may also include consequential damage resulting from the breach of warranty, whether express or implied, if it may reasonably be supposed to have been within the contemplation of the parties and might naturally be expected to follow from the breach of the warranty. The Nimrod, D.C., 141 F. 215, affirmed in Union Iron Works v. Spottswood, 5 Cir., 141 F. 834, 72 C.C.A. 300; Moulthrop & Stevens v. Hyett & Smith, 105 Ala. 493, 17 So. 32, 53 Am.St.Rep. 139; Van Antwerp-Aldridge Drug Co. v. Schwarz, supra; Vann v. McCord, supra; Patton v. Ballam, supra; Miller v. Economy Hog & Cattle Powder Co., 228 Iowa 626, 293 N.W. 4; 3 Williston on Sales (Revised Edition, 1948), § 614, pp. 371–375. Cf. Bayliss Machine & Welding Co. v. Huntsville Ice & Coal Co., 265 Ala. 383, 91 So. 2d 483. Therefore, sums of money expended for the care and treatment and temporary loss of use, or of produce, of cattle made sick by a deleterious substance found in livestock feed sold by the defendant may be included as special damages. Vann v. McCord, supra; Miller v. Economy Hog & Cattle Powder Co., supra. But loss of profits from anticipated sales and diminution in the market value of the cattle cannot be said reasonably to have been within the contemplation of the parties, do not naturally flow from the breach, and moreover, are too speculative and remote to be allowed as proper consequential damages. Holley v. Vaughan, 226 Ala. 249, 146 So. 396; Moulthrop & Stevens v. Hyett & Smith, supra. None of the cattle in the case at bar died as a result of the molded feed. The evidence tends to show that the sickness and loss of weight was only temporary. Testimony as to the market value of the cows immediately before or at the time of the consumption of the feed would be relevant to show damages only if the cows had died from eating the feed. The trial court was correct in refusing to admit testimony pertaining to the market value of the cows before and after the sale of the feed, not only because it is not a proper measurement of damages but also because special damages had not been alleged in Count One upon which the case proceeded. Mobile Light & R. Co. v. Therrell, 205 Ala. 553, 88 So. 677; Irby v. Wilde, 150 Ala. 402, 43 So. 574.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON, STAKELY, and MERRILL, JJ., concur.