125 So.2d 726

**Marion Edward DANIEL**

v.

**John Will HODGES et al.**

5 Div. 580.

Court of Appeals of Alabama.

Oct. 4, 1960.

Rehearing Denied Nov. 1, 1960.

Lewis H. Hamner, Jr., Roanoke, for appellant.

Hooton & Hooton, Roanoke, for appellees.

## CATES, Judge.

Daniel filed an action against Hodges, a game warden, for false imprisonment (two counts) and malicious prosecution (two counts) claiming $1,000 damages. He joined as defendant Western Casualty and Surety Company, surety on Hodges' bond. Code 1940, T. 41, §§ 50, 51 and 115, as amended.

This appeal is from a judgment in Hodges' favor based on a verdict directed (with hypothesis) by the trial judge.

In the "Tallapoosa Management Area," Randolph County, the regulations of the Department of Conservation provided for wild turkey hunting on a permit basis from April 8 to 12, 1958. Regulations (Game, Fish, etc.), Season 1957–58, pp. 12 and 13.

On April 11, 1958, Mr. Daniel was driving with Mr. Doyle Kirby to go wild turkey hunting. According to their testimony, in heading for the game preserve, Daniel, having by mistake got on an unmarked dirt road, turned around after having reached a dead end. This road seems to have been a private way. As Daniel and Kirby came out Hodges observed them and gave chase.

After halting Daniel and Kirby, Hodges searched the car finding two shotguns "on the floorboard," some shotgun shells and a turkey call. He placed them under arrest, put Kirby in his truck and made Daniel follow in the latter's car.

After Hodges drove for two or three miles with Daniel behind, he stopped, came back and told him, "Daniel, I have studied this over and I just made an ass of myself." He thereupon gave Daniel a notice to appear before the Hon. J. W. Heflin, Justice of the Peace at Roanoke, on May 1, 1958, on a charge of hunting on the land of another without permission. Code 1940, T. 8, § 92.

It is abundantly clear that Hodges did not see Daniel stand outside his car. He did not see him shoot a gun. He heard a shot "in the vicinity" from which he saw Daniel and Kirby come down the private road.

In making Daniel follow him by virtue of a purported arrest, Hodges detained him. And though Daniel might strictly have properly disobeyed, yet his refusal is not essential to his cause. Otherwise, too frequent breaches of the peace might be provoked. Burk v. Knott, 20 Ala.App. 316, 101 So. 811 (intentional conduct of officer such as to induce "reasonable apprehension * * * that force would be used").

In Daniels v. Milstead, 221 Ala. 353, 128 So. 447, 448, Justice Brown gave the following definition of false imprisonment:

"In false imprisonment, the essence of the tort is that the plaintiff is forcibly deprived of his liberty, and the good intent of the defendant, or the fact that he had probable cause for believing that an offense was committed, and acted in good faith, will not justify or excuse the trespass. * *"

It has also been said that the offense is:

" * * * restraining personal liberty without lawful authority, for which offence the law has not only decreed a punishment as a public crime but has also given a private reparation to the party as well by removing the actual confinement for the present by

habeas corpus (q. v.), as by subjecting the wrongdoer to an action of trespass, etc., usually called an action of false imprisonment, on account of the damage sustained by the loss of time and liberty. It must amount to a total restraint of the plaintiff's liberty for some period, however short (Bird v. Jones (1845) 7 Q.B. 742). * * * The onus of proving the defence of reasonable or probable cause lies on the defendant. An action for false imprisonment must not be confused with one for malicious prosecution where the onus of proving absence of reasonable and probable cause lies on the plaintiff (Sewell v. National Telephone Co. [1907] 1 K.B. 557). * * *" Jowitt, The Dictionary of English Law, p. 780.

The expression of onus resting on the defendant, of course, in Alabama refers to probable cause being in extenuation rather than justification. Thus, in Sugg v. Pool, 2 Stew. & P. 196, the defendant, in an action of this sort, pleaded that the Governor of Georgia had issued a proclamation that a murder had been committed there by Philip Hattox, and that the description of Hattox was identical with the description of the plaintiff. Relying upon the plaintiff's resemblance to the man in the proclaimed description, defendant caused plaintiff to be arrested. The court said:

"Many points have been made in the argument, which it is deemed unnecessary to notice, as the gist of the plea forms no defence to the action. The substance of it is, that the defendants, believing the plaintiff to be another man, caused him to be arrested. This is no justification, but merely matter of extenuation. This is sustained by all the authorities, and by analogy.

"The case of Aaron v. Alexander, Crowly and Solomons, 3 Camp.Rep. 35, is precisely in point. It was there determined, not only that the persons making the arrest, by mistake, but the keeper of the watchhouse, who received the prisoner, in equal ignorance of his identity, were guilty of a trespass. The law is thus laid down by elementary writers, who are supported by an unbroken chain of decisions. An officer, making an arrest, and the persons procuring it, act at their peril."

█ We must view the evidence on a judgment resulting from a directed verdict with all reasonable inferences in favor of the adverse party, i. e., Daniel here. Sullivan v. Alabama Power Co., 246 Ala. 262, 20 So.2d 224; Bradford v. Moore Bros. Feed and Grocery, 268 Ala. 217, 105 So.2d 825.

█ It is clear that the plaintiff made out a case of his being arrested by Hodges, when, in fact, no offense was committed in Hodges' presence. It is argued here and apparently was also pressed upon the trial judge below that the amendment of Code 1940, T. 8, § 51, as contrasted with § 673 of the 1929–30 Game and Fish Laws (see Daniels v. Milstead, supra), in effect allows a game warden to arrest a person without a warrant for a misdemeanor not committed in his presence. Section 51 reads:

"All enforcement officers and inspectors employed by the director are clothed with the power and authority of deputy sheriffs, and shall arrest without warrant and carry before the justice of the peace or the inferior criminal court of the county in which an offense is committed, any person violating any of the provisions of the game and fish laws or the rules and regulations made and promulgated thereunder."

We consider, however, that the expression "and shall arrest without warrant * * * any person violating any of * * * the game * * * laws" incorporates by reference the provisions of Code 1940, T. 15, § 154, which provides as follows:

"An officer may also arrest any person, without warrant, on any day and at any time, for any public offense committed, or a breach of the peace

threatened in his presence; or when a felony has been committed, though not in his presence, by the person arrested, or when a felony has been committed, and he has reasonable cause to believe that the person arrested committed it; or when he has reasonable cause to believe that the person arrested has committed a felony, although it may afterwards appear that a felony had not in fact been committed; or on a charge made, upon reasonable cause, that the person arrested has committed a felony."

■ Hunting on another person's land in the day time without his permission is a misdemeanor. Since Hodges arrested Daniel without a warrant and without the offense being committed in his presence, his restraint of Daniel's liberty made a prima facie cause of action. Accordingly, the affirmative charge should not have been given as to the counts of the complaint charging Hodges with unlawful imprisonment.

The judgment below is due to be reversed and the cause there remanded.

Reversed and remanded.