THOMAS, Judge.
Brazelton Properties, Inc., d/b/a Plush Horse ("Brazelton"), appeals a summary judgment entered by the Madison Circuit Court in favor of the City of Huntsville ("the city"). We dismiss the appeal.
Background
Brazelton owns certain real property located within the geographical limits of the city ("the property") on which businesses such as dinner theaters, entertainment venues, and nightclubs have operated for a number of years. In August 2014, Brazelton submitted an application to the city seeking its approval for a lounge retail liquor license regarding the property ("the 2014 application"). The next month, the city's Liquor License Review Committee ("the committee") denied approval of the 2014 application after concluding that the property did not contain a sufficient number *210 of parking spaces as required by the relevant city ordinances. The city council thereafter upheld the committee's decision.
In October 2014, Brazelton initiated an action against the city in the circuit court. Brazelton's complaint, as amended, stated, in relevant part:
"COUNT I
"....
"15. While a municipality has broad discretion to approve or disapprove the issuance of liquor licenses, such a decision granting or denying a liquor license must be set aside on judicial review if the municipality acted arbitrarily or capriciously.
"16. The [c]ity's standards as [they] relate[ ] to the number of parking spaces necessary in order to obtain a liquor license are not enforced equally. Indeed, on this very [p]roperty the [c]ity has taken inconsistent positions. While the [property] has always been designated as a place of assembly, its approved occupancy has been as high as 750, and with the current parking, was able to obtain a liquor license.[1 ] Presently, its occupancy has been reduced to 585[,] and the [c]ity has refused to issue a liquor license stating that the current parking (the count of which varied between 205 and 245) is still short of the required 255. Yet the [c]ity refused Brazelton['s] request to reduce the occupancy rating down from 585 to 425 so as to meet the 'required' parking spaces. Clearly, the [c]ity keeps moving the goal post for Brazelton....
"17. Upon information and belief, Brazelton ... is situated no differently than other establishments who have been granted liquor licenses. Such disparate and unequal treatment in the application of the rules concerning the issuance of the liquor license is arbitrary and capricious.
"18. Moreover, the unequal application by the city of the parking space requirement for the issuance of a liquor license shows that this regulation bears no substantial relationship to the health, safety, morals and general welfare and is therefore invalid.
"19. Accordingly, the [c]ity's decision to deny the liquor license to Brazelton ... is due to be set aside as arbitrary and capricious.
"COUNT II-Denial of Equal Protection
"20. Brazelton ... adopts and incorporates by reference the allegations set forth in paragraphs 1 through 19 as if fully set forth herein.
"21. The [c]ity's application of its regulations and ordinances in denying the liquor license to Brazelton violated Brazelton's right to equal protection guaranteed it by Sections 1, 6[,] and 13 of the Alabama Constitution. Specifically, the [c]ity selectively applied its licensing requirements to [Brazelton] in violation of Alabama's constitution. Therefore, the [c]ity's actions should be found to be void as a matter of law.
"22. ... Brazelton ... has suffered substantial financial harm as a result of the selective and arbitrary enforcement by the [c]ity of its regulations.
"COUNT III-Inverse Condemnation
"23. [Brazelton] adopts and incorporates by reference the allegations set forth in paragraphs 1 through 22[ ] as if fully set forth herein.
*211 "24. This is an action for inverse condemnation.
"25. As noted by the Supreme Court of Alabama[:] 'Property ownership should, and does, bring with it freedom to use one's possession as the owner deems appropriate, subject, of course, to reasonable restraints for the general health, safety or public welfare ... absent the need for such reasonable impediments, the landowner's "bundle of rights" should remain inviolate.' BP Oil Co. v. Jefferson County, 571 So.2d 1026, 1028 (Ala. 1990).
"26. Yet the actions of the [c]ity have caused the [p]roperty ... to be unsuitable for its intended purpose and [Brazelton']s right to use the property has been prevented by the actions of the [c]ity.
"27. Such actions by the [c]ity constitute a taking without just compensation in violation of Section 23 of Article 1 of the Constitution of Alabama of 1901[,] Section[ ] 235 of Article XII of the Constitution of Alabama of 1901, [and] Ala. Code § 18-1A-32 (1975).
"28. The [c]ity has the power of eminent domain, and the power to commence condemnation actions; however, the [c]ity has not instituted such actions for the taking of the property. Instead the [c]ity has denied Brazelton's application for a liquor license and thus [Brazelton] cannot use the [p]roperty according to its highest and best use and its historical purpose.
"RELIEF REQUESTED ON ALL COUNTS
"1. Enter an Order finding that the [c]ity's denial of Brazelton['s] liquor license is arbitrary and capricious and due to be reversed;
"2. Find that the [c]ity's actions were in violation of the equal protection clause afforded Brazelton under the Alabama Constitution;
"3. Determine that the [c]ity's arbitrary denial of Brazelton['s] liquor license amounts to the inverse condemnation of the [p]roperty by the [c]ity for which Brazelton ... is entitled to compensatory damages in an amount to be determined at trial; and
"4. Award Brazelton ... its attorney's fees and costs of this action as well as grant it such further legal or equitable relief as maybe appropriate under the circumstances."
The city filed two motions to dismiss regarding Brazelton's original complaint, the second of which specifically pertained to only portions of the original complaint. The circuit court entered an order indicating that the city's first motion to dismiss had become moot and entered an order denying the city's second motion to dismiss. The city thereafter filed an answer to Brazelton's complaint and submitted a petition for the writ of mandamus to the Alabama Supreme Court requesting that it order the circuit court to grant the city's second motion to dismiss. The supreme court denied the city's petition on December 11, 2015, see Ex parte City of Huntsville (No. 1140539), 224 So. 3d 155 (Ala. 2015)(table), after which Brazelton filed the amended complaint, portions of which are quoted above, and the city filed an answer to Brazelton's amended complaint.
In June 2016, the city filed a motion for a summary judgment in the circuit court regarding "all claims asserted against it" and a brief in support of its motion. In its supporting brief, the city argued, among other things, that, to the extent that Brazelton had requested monetary damages stemming from the city's alleged violations of the Alabama Constitution, such a remedy was not available under Alabama law. See Matthews v. Alabama Agric. & Mech. Univ., 787 So.2d 691, 698 (Ala. 2000) (noting an absence of authority "recogniz[ing] a *212 private cause of action for monetary damages based on violations of the provisions of the Constitution of Alabama of 1901"). Brazelton thereafter submitted a response to the city's summary-judgment motion. On August 30, 2016, the circuit court entered a judgment granting the city's motion. Brazelton filed a motion on September 13, 2016, requesting that the circuit court alter, amend, or vacate its summary judgment, and the circuit court denied Brazelton's motion on September 16, 2016. On October 11, 2016, Brazelton filed a timely notice of appeal to the Alabama Supreme Court. The appeal was transferred to this court by the supreme court pursuant to § 12-2-7(6), Ala. Code 1975.
Brazelton submitted its appellate brief to this court on January 17, 2017. On February 1, 2017, the city moved to dismiss Brazelton's appeal as moot, citing as authority Rule 27, Ala. R. App. P. In support of its motion, the city alleged that Brazelton had submitted a second application to the city seeking its approval for a lounge retail liquor license regarding the property in September 2016 ("the 2016 application"), that the committee had approved the application in November 2016, and that the city council had upheld the committee's decision on January 12, 2017. Thus, citing, among other cases, South Alabama Gas District v. Knight, 138 So.3d 971, 974 (Ala. 2013), the city argued that this court "lacks power to further adjudicate this matter."
On February 8, 2017, Brazelton submitted a response to the city's motion to dismiss. In its response, Brazelton conceded that the city had approved the 2016 application but argued that its amended complaint "ha[d] raised claims not only seeking injunctive relief, but also seeking compensatory damages resulting from the [city]'s denial of its liquor license in 2014," and it asserted that "claims exist in the [circuit] court which are not resolved by [the city]'s issuance of a liquor license to Brazelton." Specifically, Brazelton argued:
"Brazelton's request for a liquor license was initially denied on September 24, 2014, and the denial was affirmed by the Huntsville City Council on September 25, 2014.... It has been over two years since [the city] denied Brazelton's request-two years in which Brazelton's property could have been generating income absent [the city]'s denial of its liquor license. Brazelton has also been forced to incur over two years' worth of attorneys' fees and costs in litigating this matter with [the city], which fees and costs have been requested as damages.
"Regardless of [the city]'s action granting Brazelton a new liquor license, an actual controversy still exists between the parties regarding the monetary relief requested by Brazelton as a result of [the city]'s long delay in granting its license. If this Court reverses the trial court's order granting summary judgment for [the city], then Brazelton still retains its opportunity to seek monetary damages against [the city] for the deprivation of its constitutional rights. Monell v. Department of Social Services of City of New York, 436 U.S. 658, 690 (1978). If this Court fails to rule on Brazelton's appeal, Brazelton's collateral right to seek monetary damages from [the city] for constitutional violations remains undetermined. As a result, this appeal is not moot. Coaker[ v. Washington Cty. Bd. of Educ., 646 So.2d 38,] 41 [ (Ala. Civ. App. 1993) ]."
We issued an order on February 14, 2017, denying the city's motion to dismiss. The city submitted its appellate brief to this court that same day.
*213 Analysis
In its appellate brief, the city first reasserts its argument that Brazelton's appeal is moot. Brazelton did not discuss whether its appeal is moot in its principal appellate brief, and it did not file a reply brief in response to the city's appellate brief. Therefore, Brazelton's only argument before this court regarding the issue whether its appeal is moot is the argument set forth in its response to the city's motion to dismiss. Because of its jurisdictional implications, we first reconsider the city's mootness argument. See Ex parte Hampton, 189 So.3d 14, 17 (Ala. 2015) ("A moot case lacks justiciability, and an action that originally was based on a justiciable act cannot be maintained on appeal if subsequent acts or events have made the questions raised on appeal moot."); Birmingham Bd. of Educ. v. Boyd, 877 So.2d 592, 594 (Ala. 2003) ("A justiciable controversy is a prerequisite to this Court's subject-matter jurisdiction."); and C.J.L. v. M.W.B., 868 So.2d 451, 453 (Ala. Civ. App. 2003) ("[A] court's lack of subject-matter jurisdiction may be raised at any time ... and may even be raised by a court ex mero motu.").
Regarding the specific claims set forth in Brazelton's amended complaint, the parties do not dispute that Brazelton's claim requesting that the circuit court order the city to approve the 2014 application has become moot because the city has since approved the 2016 application. See, e.g., Board of Adjustment, City of Montgomery v. Priester, 347 So.2d 530, 531-32 (Ala. Civ. App. 1977) ("The Board of Adjustment originally denied Priester's request for a variance to allow the mobile homes to remain on her premises. However, subsequent to the entry of the judgment by the Circuit Court of Montgomery County, Priester and the Board of Adjustment reached agreement concerning the disposition of the mobile homes. ... Hence, there is no longer a conflict or controversy between the parties."), and Ex parte Hampton, 189 So.3d at 17 (noting that, because the plaintiff had died while the litigation was pending, the "parties agree[d] that [the plaintiff]'s claim for injunctive relief in the form of compelling the [defendants] to install [the plaintiff] to the teaching position is moot").
As noted above, however, Brazelton argued in its response to the city's motion to dismiss this appeal that its request for compensatory damages entails a controversy regarding a "collateral right" that remains justiciable. In Coaker v. Washington County Board of Education, 646 So.2d 38, 41 (Ala. Civ. App. 1993), this court stated:
"We agree that '[t]he general rule in this state is that if, pending an appeal, an event occurs which makes determination of it unnecessary, or renders it clearly impossible to grant effective relief, the appeal will be dismissed.' Grant v. City of Mobile, 50 Ala.App. 684, 687, 282 So.2d 285, 287 (Ala. Civ. App.), cert. denied, 291 Ala. 458, 282 So.2d 291 (1973). Essentially the same rule applies to cases pending a judgment by the trial court. Chisolm v. Crook, 272 Ala. 192, 130 So.2d 191 (1961). However, an exception to the general rule exists where the appellate court's failure to render a decision on an issue would leave collateral rights of the parties undetermined. Grant, supra."
See also, e.g., National Iranian Oil Co. v. Mapco Int'l, Inc., 983 F.2d 485, 489 (3d Cir. 1992) ("A case is saved from mootness if a viable claim for damages exists.").
In its amended complaint, Brazelton specifically requested compensatory damages stemming only from its inverse-condemnation claim. In the second footnote of its appellate brief, however, Brazelton *214 states that it "acknowledges that the [c]ity is entitled to [a] summary judgment as to Count III of its amended complaint for unlawful taking without just compensation." Therefore, we will consider neither whether that claim implicated a "collateral right," such that it remains justiciable, nor whether the circuit court erred in granting the city's summary-judgment motion regarding that claim. See Chunn v. Chunn, 183 So.3d 985, 998 (Ala. Civ. App. 2015) (explaining that an appellant's failure to assert an argument on appeal results in a waiver of that argument).
In its response to the city's motion to dismiss this appeal, however, Brazelton also specifically argued that its claim regarding the city's alleged failure to provide it "equal protection under the laws" formed the basis for its request for compensatory damages:
"In the count alleging an equal protection violation, Brazelton alleged that it had 'suffered substantial financial harm as a result of the selective and arbitrary enforcement by the [c]ity of its regulations,' and requested all appropriate legal and equitable relief, including attorneys' fees and costs from the [c]ity ...."
Brazelton cited Monell v. Department of Social Services of City of New York, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), in support of its argument. In Monell, the United States Supreme Court held, in relevant part: "Our analysis of the legislative history of the Civil Rights Act of 1871 compels the conclusion that Congress did intend municipalities and other local government units to be included among those persons to whom [ 42 U.S.C.] § 1983 applies." 42 U.S.C. § 1983 provides, in relevant part:
"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...."
Furthermore, " § 1983 provides a damages remedy." Guardians Ass'n v. Civil Serv. Comm'n of City of New York, 463 U.S. 582, 637, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983) (Stevens, J., dissenting and citing Monell, supra). Additionally, the United States Supreme Court has held that "state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States." Tafflin v. Levitt, 493 U.S. 455, 458, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990).
We must therefore consider whether Brazelton's amended complaint included a claim for damages under § 1983 such that Brazelton's appeal remains justiciable. In Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), the Supreme Court considered the appropriate pleading standard to be applied in § 1983 actions against municipalities. In so doing, it held that
" Rule 8(a)(2)[, Fed. R. Civ. P.,] requires that a complaint include only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' In Conley v. Gibson, 355 U.S. 41 (1957), we said in effect that the Rule meant what it said:
" '[T]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds *215 upon which it rests.' Id., at 47 (footnote omitted)."
Id. (emphasis added).[2]
In its amended complaint, Brazelton neither specifically indicated that it was asserting a claim pursuant to § 1983 nor alleged a violation of the United States Constitution or other federal law regarding the city's purported failure to afford it equal protection. Although in various filings in the circuit court and its brief on appeal Brazelton has relied upon our supreme court's analysis in Bratton v. City of Florence, 688 So.2d 233 (1996), a case involving an appeal from a summary judgment in a § 1983 action, its amended complaint did not allege that the city had deprived it of protections guaranteed by the United States Constitution.
Instead, the record indicates that Brazelton's equal-protection claim was predicated upon alleged guarantees provided by the Alabama Constitution rather than those provided by the United States Constitution. Indeed, in the portion of its amended complaint setting forth its equal-protection claim, Brazelton stated: "The [c]ity's application of its regulations and ordinances in denying the liquor license to Brazelton violated Brazelton's right to equal protection guaranteed it by Sections 1, 6[,] and 13 of the Alabama Constitution" (emphasis added). Brazelton also specifically requested that the circuit court "[f]ind that the [c]ity's actions were in violation of the equal protection clause afforded Brazelton under the Alabama Constitution" (emphasis added).
Our determination that the Alabama Constitution forms the basis of Brazelton's equal-protection claim is bolstered by our review of the argument portion of its appellate brief, a substantial portion of which is devoted to a discussion regarding our supreme court's decision in Ex parte Melof, 735 So.2d 1172 (Ala. 1999), namely whether that case is stare decisis for the proposition that the Alabama Constitution does not guarantee equal protection under the laws. Absent from Brazelton's appellate brief is an argument regarding whether the circuit court erroneously entered a summary judgment on a purported § 1983 claim, which Brazelton retrospectively implies was alleged within its amended complaint.
Because Brazelton's amended complaint expressly alleged that the city had violated its rights under the Alabama Constitution and specifically requested relief pursuant thereto, we do not view the allegations set forth in its amended complaint as "fair notice" to the city that its claims were instead predicated upon alleged violations of the United States Constitution such that it sufficiently pleaded a § 1983 claim under the standard articulated by the Supreme Court in Leatherman. Thus, we do not construe Brazelton's equal-protection claim as § 1983 claim for damages that could have prevented the mootness of this appeal.
Furthermore, to the extent that Brazelton's equal-protection claim requested damages based on the city's alleged violation of the Alabama Constitution, our supreme court has noted an absence of authority establishing "a private cause of action for monetary damages based on violations of the provisions of the Constitution of Alabama of 1901." Matthews, 787 So.2d at 698. It is clearly impossible for a court to grant effectual relief that is not provided by law; therefore, expressing an opinion regarding whether the city violated Brazelton's rights under the Alabama Constitution for that purpose would amount to contemplation of an abstract proposition-a *216 task " 'that the judiciary of Alabama is not empowered' " to perform. Auburn Med. Ctr., Inc. v. East Alabama Health Care Auth., 908 So.2d 243, 245 (Ala. Civ. App. 2003) (quoting Ex parte Connors, 855 So.2d 486, 488 (Ala. 2003) ). Thus, to the extent that Brazelton's amended complaint included a request for compensatory damages based on the city's alleged violations of the Alabama Constitution, we conclude that that claim is moot.[3]
Finally, to the extent that Brazelton has argued that its request for an award of attorney fees remains justiciable, we note that "[a]n outstanding request for attorney fees 'does not resuscitate an otherwise moot controversy.' " Chapman v. Gooden, 974 So.2d 972, 984 (Ala. 2007) (quoting Cammermeyer v. Perry, 97 F.3d 1235, 1238 (9th Cir. 1996) ). Furthermore, "it is not customary to decide moot questions merely to ascertain who is liable for costs." City of Mobile v. Scott, 278 Ala. 388, 390, 178 So.2d 545, 547 (1965). Because Brazelton has waived any argument regarding its inverse-condemnation claim, and because the other claims asserted in Brazelton's amended complaint are moot, we dismiss Brazelton's appeal from the circuit court's summary judgment in favor of the city.
APPEAL DISMISSED.
Thompson, P.J., and Pittman, Moore, and Donaldson, JJ., concur.

Portions of the record indicate that the city had approved liquor-license applications regarding the property in the past, but those liquor licenses had reportedly been a different type than the kind Brazelton requested in the 2014 application.

Similar to Rule 8(a)(2), Fed. R. Civ. P., Rule 8(a)(1), Ala. R. Civ. P., requires that a pleader provide "a short and plain statement of the claim showing that the pleader is entitled to relief."

We also note that Brazelton argued in its response to the city's motion to dismiss its appeal that it "could have been generating income" if the city had not denied the 2014 application. To the extent that Brazelton asserts that it requested an award of lost profits in its amended complaint, we note that lost profits are special damages. Bayliss Mach. & Welding Co. v. Huntsville Ice & Coal Co., 265 Ala. 383, 389, 91 So.2d 483, 488 (1956). Rule 9(g), Ala. R. Civ. P., provides: "When items of special damage are claimed, they shall be specifically stated." Brazelton did not specifically state in its amended complaint that it was seeking an award of lost profits stemming from the city's denial of the 2014 application; therefore, Brazelton's amended complaint did not adequately plead a request for lost profits.