CATHARINE BIGELOW *vs.* MAINE CENTRAL RAILROAD COMPANY.

Somerset.   Opinion December 20, 1912.

*Appearance of cans. Canned goods. Chemically analyzed. Damages. Defect. Guaranty. Imperfections. Insurer. Inspection. Privity. Proximate cause. Responsibility. Rule of law. Unwholesome food. Victualer.*

In this action, the plaintiff seeks to recover damages for injury to her health caused by unwholesome and poisonous canned asparagus served to her by the defendant in its dining-car on the 25th day of February, A. D. 1910, upon the consumption of which the plaintiff was soon after taken violently ill, and in consequence of which suffered the injuries complained of.

The plaintiff contends that the strict rules of law which prevails in this class of cases will hold the defendant responsible, that the defendant in this class of cases is an insurer of the quality of the food product which he serves.

*Held:*

1. That this is not a sound rule when confined to the sale or use of canned goods.

2. The wholesaler, the retailer and the user of these goods, whether in the capacity of caterer, seller or host, sustain an entirely different duty respecting a knowledge of their contents and quality than prevails with regard to knowing the quality of those food products which are open to the inspection of the seller or victualer.

3. The early rules of law were formulated upon the theory that the provision dealer and the victualer, having an opportunity to observe and inspect the appearances and quality of the food products they offered to the public were accordingly charged with knowledge of their imperfections.

4. Upon the state of facts in the case at bar, a situation arises that cannot fall within these rules. No knowledge of the original or present contents of a perfect appearing can is possible in the use of canned products. They cannot be chemically analyzed every time they are used. Accordingly, the reason for the rule having ceased, a new rule should be applied to the sale and use of canned goods that will more nearly harmonize with what is rational and just.

5. Upon the assumption that the plaintiff was made sick by the asparagus furnished her by the defendant company, the defendant is not liable in the absence of an express warranty.

On report. Judgment for defendant.

This is an action on the case by Catharine Bigelow against the Maine Central Railroad Company to recover damages for injuries to her health occasioned by eating canned asparagus furnished to her in its dining-car on the 25th day of February, A. D. 1910, by defendants' caterers in said car. The plaintiff contends that the asparagus furnished her by the defendant in said dining-car was unwholesome and poisonous. The plea, the general issue with brief statement that the defendant is in no way responsible as it did not know, and by the exercise of reasonable prudence and care, could not have known, that said food was unwholesome. At the conclusion of the evidence, the case was reported to the Law Court for final determination upon so much of the foregoing evidence as is legally admissible, the Law Court, to render such judgment as the case and the evidence warrant, including the assessment of damages, if the plaintiff is entitled to recover.

The case is stated in the opinion.

*George H. Morse,* for plaintiff.

*Forrest Goodwin,* for defendant.

SITTING: WHITEHOUSE, C. J., SAVAGE, SPEAR, CORNISH, KING, HALEY, HANSON, JJ.

SPEAR, J. This is an action on the case brought by the plaintiff against the Maine Central Railroad Co. to recover damages for

injury to her health alleged to be caused by unwholesome and poisonous food served to her by the defendant in its dining-car on the 25th day of February, 1910. The case comes to the Law Court on report. The food specifically complained of was canned asparagus served on toast, upon the consumption of which the plaintiff was soon after taken violently ill. Upon the assumption that the asparagus was poisonous and was the proximate cause of the injuries of which the plaintiff suffered, is the defendant then, under the evidence in the case, liable? The undisputed evidence shows that the train crew on the dining-car was experienced and intelligent. The conductor had had a long experience and the chef had served fifteen years as a cook. The can of asparagus from which the plaintiff was served was purchased by the commissary agent of the company, who was, at the time handling the dining-car service upon the Boston & Maine and Maine Central Railroads. He purchased this particular can with others either on February 15th or 17th of the month in which it was served, of S. S. Pierce Company, Boston. It was a well-known brand, called "The Red Label Brand" and the only kind used upon the dining-car. It was guaranteed by the S. S. Pierce Company as pure, under the Pure Food and Drug Act of 1906. It was bought by S. S. Pierce Company of a dealer who packed it expressly for that company. It was the highest grade and bore the S. S. Pierce label. This company sells a quarter of a million of this label every year, and has done so for the last ten or fifteen years, and in that time no case of poisoning has arisen. After this can was purchased, it was properly kept for either eight or ten days until the morning of its use, when it was placed in the custody of the officials of the dining-car. This can, with others, was sealed; none had been opened. There was apparently no defect in the can nor any other indications of imperfection. It was opened by the chef and prepared in the usual manner. The dining-car was inspected that morning and found perfect in every department. The chef in opening the can and preparing the asparagus discovered nothing in the appearance, taste or odor that was not right. He says it appeared perfect in every particular; nor did the waiter who served it, or the conductor who saw it, notice anything. The plaintiff also testified that it looked

all right and tasted all right; that there was nothing whatever to indicate any trouble with it.   No evidence is offered tending to show negligence on the part of the defendant company in the purchasing, preparation, or serving of this asparagus.   The allegation in the plaintiff's writ is that it was negligently prepared, unwholesome and poisonous, and that the defendant ought to have known these facts.

The plaintiff, however, contends, admitting all these things to be true, that the strict rule of law which prevails in this class of cases will hold the defendant responsible.   It is claimed, under the plaintiff's declaration, that it is not necessary for her to show privity of contract or negligence, and due care is no defense; that scienter need not be alleged, and if alleged, need not be proved; negligence need not be alleged, and if alleged, need not be proved; that the defendant from the nature of its business and calling was bound to know; that it impliedly represented and guaranteed that the food was wholesome and fit for consumption, and, if it was not, and the party eating it was injured, it was liable.   In other words, the plaintiff's contention is that the defendant in this class of cases is an insurer of the quality of the food product which it serves.   We are unable to believe that this is a sound rule, when confined to the sale or use of canned goods.

It has been the boast of the common law that it was able to adjust itself to the inevitable vicissitudes and changes that occur in the development of industrial life, business methods, social progress and scientific invention.   Within the last century has appeared from time to time the discovery of devices that have revolutionized the methods and accomplishments of human effort.   The subjugation of steam and control of electricity, and the consequent inventions for their practical use, have become instrumental in introducing an epoch in the history of science.   Industrial, commercial and financial projects have also assumed new forms and employed new methods.   Yet, to the adjustment of all the new and varied relations arising from the adoption, application and use of these new agencies and new methods, the principles of the common law have adapted themselves so aptly as to render almost imperceptible the radical transitions that have taken place.

Of little less importance than the appearance of the great achievements referred to, is the establishment and development of the canning industry in this country and in other parts of the world. It may be said that the art of canning, if not invented within the last century, has, at least, assumed the vast proportions which it has now attained, within a comparatively few years. It involves a unique and peculiar method of distributing, for domestic and foreign use almost every product known to the art of husbandry. The wholesaler, the retailer, and the user of these goods, whether in the capacity of caterer, seller or host, sustain an entirely different duty, respecting a knowledge of their contents and quality, than prevails with regard to knowing the quality of those food products, which are open to the inspection of the seller or victualer. With reference to these it may well be considered, as has been held, that having an opportunity to investigate, and thereby to know the quality of their merchandise, they are charged with a responsibility amounting to a practical guarantee.

The early rules of law were formulated upon the theory that the provision dealer and the victualer, having an opportunity to observe and inspect the appearance and quality of the food products they offered to the public, were, accordingly charged with knowledge of their imperfections. *Winslow* v. *Lombard,* 18 Pick., 57; *Bishop* v *Webber,* 139 Mass 411. But upon the state of facts in the case at bar, a situation arises that cannot, in the practical conduct of the canning business, fall within these rules. No knowledge of the original or present contents of a perfect appearing can is possible, in the practical use of canned products. They cannot be chemically or bacteriologically analyzed every time they are used. Accordingly, the reason for the rule having ceased, a new rule should be applied to the sale and use of canned goods, that will more nearly harmonize with what is rational and just.

The statement of facts before us shows that the asparagus served to the plaintiff was of a very high brand, sold by a most reliable firm, guaranteed under the pure food law, and without fault or blemish discoverable to the eye, to the smell or taste. It was apparently a perfect can of what it purported to contain. The plaintiff, in February, must have known it was a canned product when she

ordered it. *Winslow* v. *Lombard,* 18 Pick., 57. Upon her order she was entitled to a reputable brand, packed and inspected in accordance with approved methods, and the law implied a warranty on the part of the defendant to furnish it. This obligation was fully met. But what was the legal relation sustained by the plaintiff and defendant with respect to their knowledge, and means of knowledge, of this can of asparagus? It seems to us it was absolutely mutual. To make this relation clear, suppose, by way of illustration, this identical can of asparagus had been shown to the plaintiff for inspection. Then what are the necessary inferences? The defendant knew it was a can of asparagus. The plaintiff knew it was a can of asparagus. The defendant knew it was The Red Label Brand. The plaintiff knew it was the Red Label Brand. The defendant knew it was put up by the S. S. Pierce Company. The plaintiff knew it was put up by the S. S. Pierce Company. The defendant knew it was guaranteed by the pure food act. The plaintiff knew it was guaranteed by the pure food act. The defendant could discover no imperfection about the can. The plaintiff could discover none. The defendant observed no fault with the contents. The plaintiff found none. It, therefore, appears that it was utterly impossible for the defendant to know anything more about the contents of this can of asparagus than did the plaintiff. With regard to this knowledge, or means of obtaining it, they were upon a perfectly equal footing. The plaintiff and the defendant necessarily understood the situation precisely alike. There could be no mistake. The plaintiff knew, or should be charged with knowledge, that the defendant could have no possible information concerning the contents of that can which she did not have. We know of no rule of law, which will imply a warranty of that, of which it is impossible for a defendant to know by the exercise of any skill, knowledge or investigation, however great. In other words, neither law nor reason require impossibilities. As was said by Chief Justice Shaw in *Winslow* v. *Lombard,* 18 Pick., 57, with reference to the inference of an implied warranty in a sale of fish: "In applying this rule to the present case, the question is what did the parties mutually understand by the contract, as it was reduced to writing." If we apply this rule to the case at bar the only pos-

sible conclusion is, that the parties understood the matter precisely alike, and that the defendant sold, and the plaintiff bought, exactly what she ordered. She, therefore, assumed the risk of its imperfections, as there was no possible way, either for her or the defendant, consistent, with the practical use of the product, to test its quality.

But in this same case the rule which we invoke seems to be sustained by analogy of reasoning, and the distinction made between a sale of provisions, which are open to inspection, and a sale of food products, which are packed under inspection, and calculated to be offered in the markets for sale in the inspected packages. On page 62 it is said: "In a case of provisions, it will readily be presumed that the vendor intended to represent them as sound and wholesome, because the very offer of articles of food for sale implies this, and it may readily be presumed that a common vendor of articles of food, from the nature of his calling, knows whether they are unwholesome and unsound or not. From the fact of their being bad, therefore, a false and fraudulent representation may readily be presumed. But these reasons do not apply to the case of provisions, packed, inspected, and prepared for exportation in large quantities as merchandise. The vendee does not rely upon the supposed skill or actual knowledge of the vendor, but both rely upon the skill and responsibility of the inspector, as verified by the brand, for all qualities which the brand indicates; and for damage which may happen afterwards, and against which, therefore, the brand offers no security, the vendee must secure himself by the terms of the contract; and unless he does so or unless he is deceived by a false representation of the present and actual condition of the commodity, on which he would have a remedy of a different character, he must be supposed to have been content to take the risk on himself."

Whatever may be the rules of law, and they are not uniform, pertaining to the liability of caterers, victualers, hotel-keepers or retailers of provisions, with respect to the warranties implied from the transaction of their various kinds of business, there can be little doubt that, in the class of cases now under consideration, the rule laid down by Chief Justice Shaw with respect to packed and branded products is the prevailing and correct one, and should apply

with increased force to the sale of canned goods. What duties the law may impose upon manufacturers of food products, which turn out defective, we do not assume to decide.

But in the case at bar, upon the assumption that the plaintiff was made sick by the asparagus furnished her by the defendant company, it is the opinion of the court that, in the absence of an express warranty, the defendant is not liable.

*Judgment for the defendant.*