COVAN N. SAMS
*vs.*
EZY-WAY FOODLINER CO.

Cumberland.   Opinion, January 19, 1961.

*Peter Rogers,*
*Douglas P. MacVane,*
*Edward Rogers,* for plaintiff.

*Mahoney, Desmond & Mahoney,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

WILLIAMSON, C. J.    This case is before us on exceptions to the direction of a verdict for the defendant. The plaintiff seeks damages under Section 15 II of the Uniform Sales Act for breach of an implied warranty of merchantability of "hot dogs" purchased by him from the defendant. Taking the evidence with its inferences in the light most favorable to the plaintiff, we are of the opinion a jury could have found as follows:

The defendant operated a self-service supermarket in which the customers made their own selection of food products and paid for them at the check-out counter. The plaintiff purchased a plain sealed plastic bag containing frankfurts. There were signs on the store window and near like bags indicating a special sale of "Jordan's Hot Dogs." On the following day the plaintiff's wife removed the frankfurts from the bag and boiled and served them to the plaintiff in the evening meal with salad and mashed potatoes. The plaintiff testified that, "I bit down onto this hot dog and I crushed in my mouth, first I thought it was a bone but on examining I found it was glass." After a few days of discomfort from a sore throat and a sore tongue, he consulted a physician. Three small slivers of glass were removed from his mouth.

The frankfurts were made by a third party and not by the defendant. The good reputation of the maker was unquestioned. It is agreed that inspection would not have revealed the defect of which the plaintiff complains to either the plaintiff or defendant.

The defendant raises an issue that the evidence would not warrant a finding that the frankfurt contained glass. In the absence of such a finding there could, of course, be no verdict for the plaintiff whatever the extent of the warranty.

Under the familiar rule, a finding of fact may not be based on guess, conjecture, or a choice among possibilities. *Ross* v. *Porteous Mitchell & Braun Co.*, 136 Me. 118, 3 A. (2nd) 650. The defendant says in substance that the jury under the rule could not determine whether the glass was in the frankfurt, in the salad, in the mashed potato, or on the plaintiff's plate.

It does not seem unreasonable to us that a person in plaintiff's situation should know that the injury came in biting upon the frankfurt and not from some other source during the meal. Taking the evidence in its entirety, we are satisfied that a jury would be warranted in finding that glass in the frankfurt caused plaintiff's injury.

The controlling issue in this action of a plaintiff purchaser-consumer against a defendant retailer is whether there is a "sealed container exception" from the implied warranty of merchantability under our Sales Act. *Ryan* v. *Progressive Grocery Stores*, 255 N. Y. 388, 175 N. E. 105, 74 A. L. R. 339 and Annot., and *Botti* v. *Venice Grocery Co.*, 309 Mass. 450, 35 N. E. (2nd) 491, 135 A. L. R. 1387 and Annot. represent the position of the purchaser; *Bigelow* v. *M. C. R. R.*, 110 Me. 105, 85 A. 396, that of the seller.

Liability of the defendant in this action rests solely upon an implied warranty of merchantability under Section 15 II of the Uniform Sales Act. (R. S., c. 185, first enacted P. L., 1923, c. 191.) It arises, if at all, by contract and is not dependent in the slightest degree upon fault of the defendant. The pertinent portions of Section 15 read.

> "Sec. 15. **Implied warranties of quality.**—Subject to the provisions of this chapter and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:

"**I.** Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment, whether he be the grower or manufacturer or not, there is an implied warranty that the goods shall be reasonably fit for such purpose.

"**II.** Where the goods are bought by description from a seller who deals in goods of that description, whether he be the grower or manufacturer or not, there is an implied warranty that the goods shall be of merchantable quality.

"**III.** If the buyer has examined the goods, there is no implied warranty as regards defects which such examination ought to have revealed.

"**IV.** In the case of a contract to sell or a sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose."

There is no suggestion in the record that the plaintiff relied upon the seller's judgment or skill within the meaning of Clause I in selecting the brand, i.e., "Jordan's Hot Dogs," or the particular bag of frankfurts. The seller did no more than offer "Jordan's Hot Dogs" for sale. The case is analogous insofar as reliance is concerned (and on other points as well) with *Ryan* v. *Progressive Grocery Stores, supra.* There the consumer asked for and purchased "Ward's bread" wrapped in a sealed package. The plaintiff was injured by a pin within the bread. The New York Court of Appeals, speaking through Judge Cardozo, held (1) that there was no reliance upon the seller on which to base an implied warranty of reasonable fitness under Clause I, and (2) that the consumer could recover on breach of an implied warranty of merchantability under Clause II.

The plaintiff does not contend that he relied upon the defendant in selecting the particular brand of frankfurts pur-

14

chased by him. He brings his case solely upon the warranty of merchantability.

A "hot dog" containing glass is, of course, not fit to eat and is therefore not of merchantable quality. The test under Clause II is not that buyer and seller treated the goods as merchantable, but whether they were so in fact. *Grant, Appt.* v. *Australian Knitting Mills, Ltd. et al.,* 1936 A. C. 85, 105 A. L. R. 1483 (deleterious substance in Golden Fleece underwear) ; *Ryan* v. *Progressive Grocery Stores, supra* (pin in Ward's bread) ; *Botti* v. *Venice Grocery Co., supra* (deleterious substance in LaRosa macaroni) ; *Henningsen* v. *Bloomfield Motors, Inc.* (N. J.), 161 A. (2nd) 69; *Mead* v. *Coca Cola Bottling Co.,* 329 Mass. 440, 108 N. E. (2nd) 757; 4 Williston on Contracts § 997 (rev. ed.) 1 Williston on Sales § 243 (rev. ed.).

The frankfurts in the sealed plastic bag were sold by description within the meaning of Clause II. Assuming (we need not decide) that "Jordan's Hot Dogs" was a trade or brand name under Clause IV, the warranty of merchantability under Clause II was not thereby destroyed. Indeed, the trade name of "Jordan's Hot Dogs" was fairly intended to describe the goods to the prospective customer. *Botti* v. *Venice Grocery Co., supra; Ryan* v. *Progressive Grocery Stores, supra; D'Onofrio* v. *First National Stores, Inc.* (R. I.), 26 A. (2nd) 758. See also *Adams* v. *Peter Tramontin Motor Sales* (N. J.), 126 A. (2nd) 358; *Brennan* v. *Shepherd Park Pharmacy* (D. C.), 138 A. (2nd) 494.

The fact that the frankfurts were sold in a self-service market does not affect the result. The sign, or label, effectively described the goods in the market and in the package. The printed word was the silent salesman. The vitality of Clause II does not rest upon the presence of a clerk. Compare *Mead* v. *Coca Cola Bottling Co., supra,* in which the Massachusetts Court in holding a warranty of merchantability under Clause II attached to the sale of coca cola in an automatic vending machine, said at p. 758:

"The sale here was of a bottled beverage by description. It was a sale of goods by a trade-name generally known as a name describing a particular beverage. (Several citations omitted). Botti v. Venice Grocery Co., supra. . The sale was completed by the payment of the price and by the delivery of the goods although such delivery was made by means of a mechanical instrumentality... There seems to be no essential difference in the method adopted for delivery from that employed in self-service stores where the customer is authorized to take goods from the shelves and carry them away on payment of the stipulated price. See Lasky v. Economy Grocery Stores, 319 Mass. 224, 65 N.E. 2d 305, 163 A.L.R. 235."

In *Lasky* it was held that a sale in a self-service market is completed only by payment, and that prior to payment there was no implied warranty of merchantability under Clause II. The court gave no indication that such a sale was not a sale by description. We recognize that a U. S. Court of Appeals has held otherwise. *Torpey* v. *Red Owl Stores*, 228 F. (2nd) 117 (8th Cir.)

We come to the issue of whether the retailer of food in a sealed container is insulated from an implied warranty of merchantability under the Sales Act. We make no distinction between the can of asparagus *(Bigelow)*, the package of macaroni *(Botti)*, the bread wrapped in paper and sealed *(Ryan)*, and the "hot dogs" in the sealed plastic bag. In each instance we have a sealed container or an original package effectively preventing inspection by the retailer at any time and by the purchaser until the container is opened. The basis of the "sealed container exception" is that the purchaser could not have placed reliance upon the retailer's skill or judgment in determining that the contents were fit to eat.

Our task is to determine the meaning of Clause II of our Act.

"**Sec. 74. Interpretation shall give effect to purpose of uniformity.**—This chapter shall be so interpreted and construed, if possible, as to effectuate its general purpose to make uniform the laws of those states which enact it." (R. S., c. 185.)

The Uniform Sales Act codified, extended, and liberalized the common law. Rules inconsistent with the Act were thereby abolished. *Rinaldi* v. *Mohican Co.*, 225 N. Y. 70, 121 N. E. 471; *Ward* v. *Great Atlantic & Pacific Tea Co.*, 231 Mass. 90, 120 N. E. 225, 5 A. L. R. 242 and annot; *Kurriss* v. *Conrad & Co., Inc.*, 312 Mass. 670, 46 N. E. (2nd) 12; *Henningsen* v. *Bloomfield Motors, Inc., supra; Ryan* v. *Progressive Grocery Stores, supra; Poulos* v. *Coca Cola Bottling Co. of Boston*, 322 Mass. 386, 77 N. E. (2nd) 405; Prosser on Torts § 83, p. 493 (2d ed.) ; Harper and James on Torts, *Implied warranties* § 28.30; 77 C. J. S., Sales § 383; 1 Williston on Sales §§ 241, 242, and 242a; 4 Williston on Contracts §§ 995, 996 (rev. ed.).

In *Bigelow* v. *M. C. R. R., supra,* decided in 1912 before the adoption of the Uniform Sales Act in Maine, the court held that a dining car operator was not liable for breach of an implied warranty of fitness to a diner for illness resulting from defective canned asparagus. The decision, although limited on its facts to the liability of a restaurant keeper to his guest, may fairly be said to state the common law of our state applicable, as here, in the case of the purchaser-consumer against the retailer.

In *Trafton* v. *Davis,* 110 Me. 318, 325, 86 A. 179, decided in 1913, the court, in a case involving the fitness of corn for canning purposes, stated the *Bigelow* rule as follows:

"In order to give their brand of corn a legitimate status in the market, every can must be guaranteed under the Pure Food Act of Congress of 1906. Dealers who sell to their customers a high grade of goods, packed and inspected in accordance with approved methods, and expressly guaranteed under

> the Pure Food Act, with no defect discoverable by the exercise of the sense of sight, smell or taste, and hotel keepers and victualers who furnish such goods to their guests for food, are not liable for injuries to such customers or guests caused by eating such food, though it is in fact found to be poisonous. *Bigelow v. Maine Central R.R. Co.*, 110 Maine 105, 85 Atl., 396. Whatever liability for damages there may be in such a case, must rest solely upon the packer who cans the goods."

Since the enactment of the Sales Act in 1923, the *Bigelow* case has been cited twice and the *Trafton* case once. In *Pelletier* v. *Dupont*, 124 Me. 269, 272, 128 A. 186, in 1924 a baker was held not liable on an implied warranty for damages resulting from a pin in his bread, wrapped in wax paper and sealed, and sold by a retailer to a purchaser-consumer. The court, in discussing in general terms the liability of a seller to a purchaser, said:

> ". . . where, however, the transaction is between a dealer and a consumer, unless the consumer assumes the risk by selecting the article himself, there is an implied warranty that it is wholesome and fit for consumption as food; Uniform Sales Act, Chap. 191, Sec. 15 (1); Public Laws, 1923; citations) though this court has made an exception in the case of canned or tinned goods, *Bigelow v. M.C.R.R.*, 110 Maine, 105; *Trafton v. Davis*, 110 Maine, 318, 325; an exception not recognized in Massachusetts as appears in the case last cited from that jurisdiction." (The *Ward* case, *supra*.)

It is to be noted that the application of an implied warranty under either Clause I or Clause II to a sale of food in a sealed container was not in issue. The court made the ground of its decision, namely, lack of privity, clear in saying, at p. 275:

> "After a careful review of the authorities, this court, while approving the doctrine recognized in *Bigelow*. . . and *Trafton*. . . that a manufacturer of

> food under modern conditions of preparing and dispensing such products owes a duty to every consumer purchasing his products in the open market, finds no good reason for repudiating or modifying, even in the case of food products, however prepared, the well-established rule that in order to recover on a warranty, there must be a privity of contractual relations between the parties, which is wholly lacking in the case at bar."

Lack of privity is not in issue in the instant case. The plaintiff himself is the purchaser-consumer in contractual relationship with the defendant retailer. There is no suggestion herein that recovery upon the warranty would be open to one not in privity with the defendant.

In discussing proof of negligence in an action by a consumer against a bottler arising from a deleterious substance in ginger ale, the court said, in *Lajoie* v. *Bilodeau,* 148 Me. 359, 363, 93 A. (2nd) 719:

> "See also regarding foods sold by retailer, *Bigelow v. MCRR Co.,* 110 Me. 105, and *Pelletier v. Dupont,* 124 Me. 269, 39 A.L.R. 972 where the actions were on contract, and not actions for negligence against the manufacturer."

Under the Sales Act, by the great weight of authority there is no "sealed container exception." *Jackson* v. *Watson & Sons* (1909), 2 K. B. 193, 16 Am. & Eng. Annot. cases 492; *Martin* v. *Great Atlantic & Pacific Tea Co.,* 301 Ky. 429, 192 S. W. (2nd) 201 (changing sealed container rule under Kentucky common law) ; *Ward* v. *Great Atlantic & Pacific Tea Co., supra; D'Onofrio* v. *First National Stores, Inc., supra; Burkhardt* v. *Armour & Co.,* 115 Conn. 249, 161 A. 385, 90 A. L. R. 1260 and Annot.; *Dow Drug Co.* v. *Nieman et al.,* 57 Ohio App. 190, 13 N. E. (2nd) 130; Prosser, "The Implied Warranty of Merchantable Quality" (1943), 27 Minn. L. Rev. 117; 4 Williston, Contracts §§ 995, 996; Prosser on Torts § 83, p. 495; 2 Harper and James on Torts,

Retailer's strict liability § 28.30; Dickerson, "Products Liability and the Food Consumer" (1951) § 1.3 (common law); § 1.15 (Under Sales Act); generally §§ 1.3 to 1.19; 22 Am. Jur. *Food* §§ 99, 100; 77 C. J. S., *Sales* § 331; Annot. 142 A. L. R. 1434; 1 Uniform Laws Annot. § 15, n. 74 and 149. *Contra, Kirkland* v. *Great Atlantic & Pacific Tea Co.,* 233 Ala. 404, 171 So. 735; *Bradford* v. *Moore Brothers Feed and Grocery* (Ala.), 105 So. (2nd) 825; *Wilkes* v. *Memphis Grocery Co.,* 23 Tenn. App. 550, 134 S. W. (2nd) 929; *Green* v. *Wilson* (Ark.), 105 S. W. (2nd) 1074 (apparently sealed container rule not altered by Sales Act).

"Reasonably fit for such purpose," under Clause I, and "merchantable quality," under Clause II, are equivalent with respect to food for human consumption. The test is whether the food is fit to eat. Compare *Ross* v. *Porteous Mitchell & Braun Co., supra* (dress shields), and *Keenan* v. *Cherry & Webb,* 47 R. I., 125, 131 A. 309 (fur coat). The difference between the two warranties lies in the factor of *reliance,* present in Clause I and not in Clause II, and the factor of *description,* present in Clause II, and not in Clause I.

The leading case in the country under Clause II is undoubtedly *Ryan, supra,* in which, as we have seen, the retailer was held liable on a warranty of merchantability in the sale of "Ward's bread" containing a pin. The court found no reliance on the retailer by the purchaser, who had requested and obtained "Ward's bread." There was, therefore, no liability under Clause I. Under Clause II, however, reliance was not a factor, and so the sale by description was made with an implied warranty of merchantability. In *Botti, supra,* the Massachusetts Court, citing *Ryan* with approval, applied like principles in holding the retailer of La-Rosa macaroni liable to a purchaser-consumer. Other illustrative cases are: *Taylor* v. *Jacobson,* 336 Mass. 709, 147 N. E. (2nd) 770 (hair dye); *Casagrande* v. *F. W. Woolworth Co.,*      Mass.      , 165 N. E. (2nd) 109 (deodor-

ant) ; *Vincent* v. *Nicholas E. Tsiknas Co.*, 337 Mass. 726, 151 N. E. (2nd) 263 (baby food) ; *D'Onofrio* v. *First National Stores, Inc., supra* (canned corn) ; *Wren* v. *Holt* (1903), 1 K. B. 610 (beer) ; *Morelli* v. *Fitch* (1928), 2 K. B. 636 (ginger ale).

Under the Sales Act, so interpreted, the purchaser-consumer has the benefit of a warranty of merchantability against the retailer. In turn the retailer may reach his seller, and so through the chain of distribution to the manufacturer.

In the instant case for the first time since the Sales Act we have the problem of the sealed container presented to us. The *Pelletier* and *Lajoie* cases, *supra,* since the Sales Act, did not touch the point in issue. They are not to be considered as authoritative statements of the liability of a retailer of food products on an implied warranty under Section 15.

Vast changes have taken place in the manufacture and distribution of food products since the dining car case of 1912. The purchase of food in a can, jar, package, or sealed bag under brand or trade name is commonplace. The pantry shelf, the refrigerator, and the "deep freeze" evidence the fact. Sales are made over the counter, at self-service markets, and by vending machines. Inspection of such products which will uncover the defect within the container, as the defective asparagus, or the pin in the bread, is impossible as a practical matter until at least the container is opened, or in many instances, as here, until the product is eaten.

There is as well the problem of the latent defect in the product not sold in a container. The pin in the unwrapped loaf of bread may be, and probably is, hidden from the retailer and buyer no less than the pin in the wrapped loaf of "Ward's bread" in the *Ryan* case.

If the frankfurts here had not been sold in a sealed bag, inspection would not have disclosed the glass within the edible casing. Indeed, the North Carolina Court, in holding there was no sealed container rule at common law, treated a sausage as an article within a sealed container. *Rabb* v. *Covington,* 215 N. C. 572, 2 S. E. (2nd) 705.

Without the sealed container exception the retailer's exposure to liability is without question increased. Obviously liability based on fault alone is less burdensome than liability without fault based on an implied warranty of fitness or merchantability.

The burden is, however, rendered the less by the ability of the retailer to reach out on his warranty against his seller, and so in turn to the manufacturer. See *Davis* v. *Radford,* 233 N. C. 283, 63 S. E. (2nd) 822, 24 A. L. R. (2nd) 906.

The Uniform Sales Act in establishing implied warranties under Section 15 ended our "sealed container" rule at common law. The rule of the *Bigelow* case is not, in our view, sound under the Sales Act.

The plaintiff was entitled to go to the jury on his claim for damages under an implied warranty of merchantability under Clause II. On the question of damages, see Sec. 69, VII, of Uniform Sales Act; *Henderson* v. *Berce,* 142 Me. 242, 252, 50 A. (2nd) 45.

As Judge Cardozo said in *Ryan* v. *Progressive Grocery Stores, supra,* at 74 A. L. R. 342:

> "Here the dealer had notice from the nature of the transaction that the bread was to be eaten. Knowledge that it was to be eaten was knowledge that the damage would be greater than the price. (Citations) For damages thus foreseen, the buyer has his remedy, whether the warranty is one of fitness or of merchantable quality."

The entry will be

*Exceptions sustained.*