LYONS, Justice.
These cases are before this Court on a certified question from the United States District Court for the Northern District of Alabama.

Facts and Procedural History

At various times Marcella Sparks, Cindi Howard, Marion Howard, and Joshua Taylor (collectively referred to as “the consumers”) purchased a dietary supplement known as “Total Body Formula” from St. John’s Nutrition, a health-food retailer in Oxford, Alabama.[1] St. John’s Nutrition is a retail seller of Total Body Formula and received the supplement from the manufacturer in sealed, prepackaged containers. St. John’s Nutrition sold Total Body Formula to the consumers in the same condition as it was received by St. John’s Nutrition. The consumers allege that after ingesting Total Body Formula, they suffered serious and permanent physical injuries resulting from high levels of selenium and chromium contained in the supplement.
In two separate actions[2] filed on April 28, 2008, the consumers sued Total Body Essential Nutrition, Inc.; TexAmerican Food Blending, Inc.; Wright Enrichment, Inc.; and St. John’s Nutrition in the Calhoun Circuit Court, asserting claims under the Alabama Extended Manufacturer’s Liability Doctrine (“AEMLD”) for the manufacture and/or sale of a defective and unreasonably dangerous product, negligent failure to warn, negligence, negligent and/or reckless marketing, breach of the implied warranty of merchantability, and breach of the implied warranty of fitness for a particular purpose, and asserting a claim of fraud. On June 6, 2008, TexAm-erican Food Blending removed the two actions to the federal district court pursuant to 28 U.S.C. § 1382, asserting that the amount in controversy exceeded the threshold jurisdictional limit of the federal district court and that diversity jurisdiction existed because St. John’s Nutrition, the only named defendant with an Alabama residence for purposes of determin *491 ing federal diversity jurisdiction, see 28 U.S.C. § 1332(c)(1), had been fraudulently joined.
Fraudulent joinder is established “when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant.” Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th. Cir.1998). “ ‘If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court.’ ” Triggs, 154 F.3d at 1287 (quoting Coker v. Amoco Oil Co., 709 F.2d 1433, 1440-41 (11th Cir.1983)). “The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a possibility of stating a valid cause of action in order for the join-der to be legitimate.” Triggs, 154 F.3d at 1287. The removing party must establish fraudulent joinder by clear and convincing evidence. Henderson v. Washington Nat’l Ins. Co., 454 F.3d 1278, 1281 (11th Cir.2006). When fraudulent joinder is established by the removing party, “the federal court must dismiss the non-diverse defendant and deny any motion to remand the matter back to state court.” Florence v. Crescent Res., LLC, 484 F.3d 1293, 1297 (11th Cir.2007).
On July 2, 2008, the consumers moved the federal district court to remand the two actions to the Calhoun Circuit Court, arguing that St. John’s Nutrition was not fraudulently joined so as to defeat jurisdiction based on diversity of citizenship. The consumers argued in their motion that TexAmerican Food Blending had failed to establish by clear and convincing evidence that there existed no possibility that causes of action for breach of the implied warranties of merchantability and fitness for a particular purpose could be stated against St. John’s Nutrition. Relying upon the sealed-container doctrine, Tex-American Food Blending argued that the consumers could not possibly establish causes of action against St. John’s Nutrition for breach of the implied warranties of merchantability and fitness for a particular purpose because, it argued, there existed no causal relationship between the conduct of St. John’s Nutrition and the allegedly defective product.
Following a hearing, the federal district court, on September 8, 2008, entered an order finding that TexAmerican Food Blending had proven by a preponderance of the evidence that the consumers’ claims exceeded the jurisdictional amount of $75,000. However, the federal district court concluded that it is not clear under Alabama law whether claims alleging the breach of the implied warranties of merchantability and fitness for a particular purpose are subject to the defense of the sealed-container doctrine. If the consumers’ claims against St. John’s Nutrition alleging breach of the implied warranties of merchantability and fitness for a particular purpose are barred as a matter of law by the sealed-container doctrine, then the joinder of St. John’s Nutrition as a defendant in the actions would be considered fraudulent. Therefore, the federal district court, pursuant to Rule 18, Ala. R.App. P., certified the following question to this Court:
“Whether, under Alabama’s Uniform Commercial Code, a retail seller who has purchased goods from a reputable manufacturer in enclosed, pre-packaged and sealed containers, with alleged imperfections that cannot be discovered by the exercise of reasonable care by the seller, can be held liable for any alleged imperfections in the product under an implied warranty of merchantability and or fitness for particular purpose; or *492 whether, instead, the UCC imposes strict liability upon a retail seller of goods thereby eradicating the ‘lack of proximate cause defense’ provided to retail sellers under the AEMLD, as set forth in Atkins v. American Motors Corp., 335 So.2d 134 (Ala.1976).”
The former United States Court of Appeals for the Fifth Circuit, in the first case using the certification procedure adopted in Amendment No. 328, § 6.02, Alabama Constitution 1901 (now Art. VI, § 140, Off. Recomp.), stated:
“Five questions were certified but, following our usual practice, we left it to the Alabama Court to formulate the issues. As was their prerogative, the Alabama Court did just that and considered the basic issues rather than replying categorically to the certified questions.”
Barnes v. Atlantic & Pacific Life Ins. Co. of America, 530 F.2d 98, 99 (5th Cir.1976) (footnote omitted).
Consistent with this prerogative, we note that the question as framed by the federal district court refers to “strict liability” as “eradicating the ‘lack of proximate cause defense.’ ” However, as the Court noted in Atkins v. American Motors Corp., 335 So.2d 134 (Ala.1976), the recognition of a defense of lack of causal relation arising from a defendant’s activities in connection with handling the product and its defective condition “is not to be confused with the burden which rests on the plaintiff to prove that his injuries and damages were the proximate result of the defective condition of the product.” Atkins, 335 So.2d at 143 n. 4. Finally, Alabama’s Uniform Commercial Code (“the UCC”) is equally attentive to the plaintiffs burden of establishing proximate cause. See, e.g., § 7-2-715(2)(b), Ala.Code 1975 (“Consequential damages resulting from the seller’s breach include: ... Injury to person or property proximately resulting from any breach of warranty.” (emphasis added)); § 7-2-314, Ala.Code 1975, Official Comment, ¶ 13 (“In an action based on breach of warranty, it is of course necessary to show not only the existence of the warranty but the fact that the warranty was broken and that the breach of the warranty was the proximate cause of the loss sustained.” (emphasis added)).
We therefore rephrase the question posed by the federal district court as follows:
“Whether, under the UCC, a retail seller who has purchased goods from a reputable manufacturer in enclosed, prepackaged and sealed containers, with alleged imperfections that cannot be discovered by the exercise of reasonable care by the seller, can be held liable for any alleged imperfections in the product under an implied warranty of merchantability and/or fitness for particular purpose; or, put another way, whether the UCC imposes liability upon a retail seller of goods without the availability of the defense of ‘lack of causal relation’ provided to retail sellers under the AEMLD, as set forth in Atkins v. American Motors Corp., 335 So.2d 134 (Ala.1976).”
Only the consumers, TexAmerican Food Blending, and Wright Enrichment, Inc., have filed briefs with this Court.

Discussion

In Bradford v. Moore Brothers Feed & Grocery, 268 Ala. 217, 105 So.2d 825 (1958), this Court recognized the availability of the sealed-container doctrine to claims asserting the breach of implied warranties against retail sellers arising under the Uniform Sales Act.[3] The view that the *493 sealed-container defense survived the creation of implied warranties under the Uniform Sales Act has been described as the minority view. See Sams v. Ezy-Way Foodliner Co., 157 Me. 10, 18-19, 170 A.2d 160, 165 (1961), citing Kirkland v. Great Atlantic & Pacific Tea Co., 233 Ala. 404, 171 So. 735 (1936); Bradford v. Moore Bros. Feed & Grocery, supra; Wilkes v. Memphis Grocery Co., 23 Tenn.App. 550, 134 S.W.2d 929 (1939); and Green v. Wilson, 194 Ark. 165, 105 S.W.2d 1074 (1937), as expressing the minority rule and describing the opposing view as supported by “the great weight of authority.” Our Court justified the availability of the sealed-container defense on the theory that the Uniform Sales Act was declarative of the common law. See Bradford, 268 Ala. at 220,105 So.2d at 827. Other courts reached the opposite conclusion. See, e.g., Sams v. Ezy-Way Foodliner Co., 157 Me. at 21, 170 A.2d at 166 (“The Uniform Sales Act in establishing implied warranties under Section 15 ended our ‘sealed container’ rule at common law.”).
 We cannot, however, view the enactment of the UCC as a legislative exercise that is merely declaratory of the common law. See Official Comment to § 7-1-103, Ala.Code 1975:
“2.... Therefore, while principles of common law and equity may supplement provisions of the Uniform Commercial Code, they may not be used to supplant its provisions, or the purposes and policies those provisions reflect, unless a specific provision of the Uniform Commercial Code provides otherwise. In the absence of such a provision, the Uniform Commercial Code preempts principles of common law and equity that are inconsistent with either its provisions or its purposes and policies.”
Section 7-2-314, Ala.Code 1975, provides:
“(1) Unless excluded or modified (Section 7-2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.
“(2) Goods to be merchantable must be at least such as:
“(a) Pass without objection in the trade under the contract description; and
“(b) In the case of fungible goods, are of fair average quality within the description; and
“(c) Are fit for the ordinary purposes for which such goods are used; and
“(d) Run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
“(e) Are adequately contained, packaged, and labeled as the agreement may require; and
“(f) Conform to the promises or affirmations of fact made on the container or label if any.”
No provision is made for a defense to a claim of a breach of an implied warranty under § 7-2-314 based on the sealed-container doctrine. We view this silence as an abrogation of the common-law defense, rather than permission to carry it forward. Nothing in the Official Comment to § 7-2-314 supports the proposition that the sealed-container defense may be carried forward; the Comment is silent on the *494 effect of care on the part of the seller once a breach of implied warranty has been established. We applied Florida law based on analogous provisions of the Florida UCC in AmSouth Bank v. Tice, 923 So.2d 1060, 1065 (Ala.2005). We there stated:
“Thus, Burtman [v. Technical Chemicals & Products, 724 So.2d 672 (Fla.Dist.Ct.App.1999),] stands for the principle that displacement of a common-law rule under the UCC does not require an unequivocal, explicit reference to the common-law rule being displaced. If the UCC provision conflicts with the common law in some way, the common law must be said to be displaced.”
(Emphasis added.) The rule in Tice is sound and due to be applied to the identical provisions of the Alabama UCC dealing with the applicability of the common law following the adoption of the UCC. Any other result would run counter to the principles of liability established in § 7-2-314. Indeed, the availability of the sealed-container defense to a claim based on a product that arrives in a sealed package would be irreconcilable with the simultaneous recognition of a claim arising from the sale of a product that does not arrive in a sealed package yet has component parts, such as an engine crankcase, equally concealed from view, that might contain a defective piston. Of course, under the latter circumstance, a claim of breach of an implied warranty would unquestionably exist.
Recognition of the sealed-container defense to claims of breach of implied warranty under § 7-2-314 is a policy matter best left to the wisdom of the legislature. Other states have resolved the question by statute in favor of[4] and against the availability of the defense.[5]
The treatment of this identical issue in Georgia is especially instructive. In Pierce v. Liberty Furniture Co., 141 Ga.App. 175, 176, 233 S.E.2d 33, 35 (1977), superseded by statute on other grounds as stated in Alltrade, Inc. v. McDonald, 213 Ga.App. 758, 445 S.E.2d 856 (1994), a furniture store sold a porch-swing kit in a sealed container it had received from the manufacturer of the swing. The customer assembled the swing, sat in it, and was injured when a piece of hardware failed. She sued the retailer under the Georgia version of the UCC, § 2-314, alleging breach of the implied warranty of merchantability. Reversing a summary judgment in favor of the retailer, the Court of *495 Appeals of Georgia concluded that there was evidence indicating that the swing was unfit for the ordinary purposes for which such goods are used and that the retailer could be held hable for breach of the implied warranty of merchantability.
Addressing the sealed-container defense, the Georgia court stated:
“All of the post-U.C.C. authority that we have studied indicates that the implied warranty of merchantability does not base any distinctions upon whether or not goods are sold in their original packages. See, e.g., R. Anderson, 1 Uniform Commercial Code § 2-314: 70-72 (2d ed. 1970); G. Kock, Georgia Commercial Practice 40-41 (1964); White, ‘Sales Warranties Under Georgia’s Uniform Commercial Code,’ 1 Ga. State Bar J. 191, 196-97 (1964). The provision, in fact, establishes a concept for retailers similar to that employed in Code Ann. § 105-106, supra, by which manufacturers may be held strictly liable for defective products.
“Prior to the enactment of the U.C.C., Georgia adhered to the ‘sealed container doctrine.’ See Wood v. Hub Motor Co., 110 Ga.App. 101(2), 187 S.E.2d 674 (1964); Maroney v. Montgomery Ward & Co., 72 Ga.App. 485, 34 S.E.2d 302 (1945); Bel v. Adler, 63 Ga.App. 473(2), 11 S.E.2d 495 (1940). According to that doctrine, no warranty of merchantability applied as to the retailer of goods in their original packages, manufactured by reputable manufacturers, and in general use in the retail trade. In Wood v. Hub Motor Co., supra, however, it was specifically noted that this line of decisions was based on Code § 96-301, which was repealed with the advent of the U.C.C. in Georgia.
“Since the adoption of the U.C.C., several Georgia cases have applied the implied warranty of merchantability to retailers of goods sold in sealed packages. In Fender v. Colonial Stores, Inc., 138 Ga.App. 31(1)(A), 225 S.E.2d 691 (1976), the plaintiff took a six-pack carton of Coca-Cola from a shelf in the supermarket. She then proceeded to the checkout counter, and placed the carton upon the counter, at which time a bottle exploded and injured her. She sued the supermarket and suffered a directed verdict. This court held, on p. 35, 225 S.E.2d p. 695, ‘that Coca-Cola bottles which would break under normal handling are not fit for the ordinary use for which they were intended ... ’ and thus there was a prima facie showing by the plaintiff of a claim under the U.C.C.’s implied warranty of merchantability. The case was remanded for a jury trial.
“Chaffin v. Atlanta Coca Cola etc. Co., 127 Ga.App. 619(1), 194 S.E.2d 513 (1972), also deals with a bottled soft drink which was not merchantable. In this case the plaintiffs daughter purchased a Coke from a vending machine at a Big Apple grocery store. The plaintiff was injured while drinking an impure substance which was contained in the bottle. The plaintiff sued the grocery store on several grounds, including that of breach of the U.C.C. implied warranty of merchantability. The judge refused to charge the jury as to the implied warranty, and the jury found against the plaintiff. This court held that the trial court erred in its refusal to charge.
“Numerous other cases from this court, while not dealing specifically with goods sold in original containers, have used a strict liability approach to hold retailers liable for damage, suffered due to a breach of the U.C.C. implied warranty of merchantability. Redfern Meats v. Hertz, 134 Ga.App. 381, 215 S.E.2d 10 (1975) (improperly operating *496 truck); Ray v. Deas, 112 Ga.App. 191, 144 S.E.2d 468 (1965) (foreign substance in hamburger).”
141 Ga.App. at 176-78, 233 S.E.2d at 35-36 (emphasis added). A subsequent enactment of the Georgia Legislature has deprived Pierce v. Liberty Furniture Co. of precedential value as to its treatment of a separate issue involving strict liability. See Ga.Code Ann. § 51-1-11.1 (2006).
When the Alabama Legislature enacted the UCC, it repealed the Uniform Sales Act. See § 7-10-102(1), Ala.Code 1975. The now repealed Uniform Sales Act was acknowledged by this Court to be the basis for the sealed-container defense in Bradford, 268 Ala. at 220, 105 So.2d at 827. On the same rationale as that employed by the Georgia appellate court in Pierce v. Liberty Furniture Co., we conclude that the replacement of the Uniform Sales Act with the UCC eliminated the sealed-container defense.
The recourse of the retailer under the circumstance here presented is a claim against its seller on its breach of implied warranty, not absolution. See Pierce v. Liberty Furniture Co., 141 Ga.App. at 178, 233 S.E.2d at 36, stating the correct result under analogous provisions of the Georgia UCC:
“It should be noted that under this holding a retailer is not a defenseless party who will be caught with a monetary loss due to another’s faulty construction of products. The retailer’s remedy is an action over against his seller not exculpation. The retailer may rely on the wholesaler or manufacturer to supply merchantable goods, and if they are not merchantable, the retailer has the same claim for breach of warranty as its customer had against it.”
We answer the certified question in the affirmative and hold that the sealed-container defense is not available to the retail seller of food products in claims asserting a breach of implied warranty under the UCC.
QUESTION ANSWERED.
COBB, C.J., and WOODALL, PARKER, and MURDOCK, JJ., concur.
STUART, SMITH, BOLIN, and SHAW, JJ., dissent.

. The consumers state that St. John’s Nutrition "apparently is a sole proprietorship.” Consumers' brief, at 1.

. Sparks was the plaintiff in the first action (CV-08-PT-1010-E), and Cindi Howard, Marion Howard, and Taylor were the plaintiffs in the second action (CV-08-PT-1012-E).

. The Uniform Sales Act was repealed when the UCC was enacted. See § 7-10-102(1), *493 Ala.Code 1975.

. See N.C. Gen.Stat. Ann. § 99B-2(a) (2007) ("No product liability action, except an action for breach of express warranty, shall be commenced or maintained against any seller when the product was acquired and sold by the seller in a sealed container or when the product was acquired and sold by the seller under circumstances in which the seller was afforded no reasonable opportunity to inspect the product in such a manner that would have or should have, in the exercise of reasonable care, revealed the existence of the condition complained of, unless the seller damaged or mishandled the product while in his possession; provided, that the provisions of this section shall not apply if the manufacturer of the product is not subject to the jurisdiction of the courts of this State or if such manufacturer has been judicially declared insolvent.”).

. See, e.g., Tenn.Code Ann. § 29-28-106(a)(2000) ("No 'product liability action,’ as defined in § 29-28-102(6), shall be commenced or maintained against any seller when the product is acquired and sold by the seller in a sealed container and/or when the product is acquired and sold by the seller under circumstances in which the seller is afforded no reasonable opportunity to inspect the product in such a manner which would or should, in the exercise of reasonable care, reveal the existence of the defective condition. The provisions of the first sentence of this subsection shall not apply to: (1) Actions based upon a breach of warranty, express or implied, as defined by title 47, chapter 2